MONTGOMERY, Plaintiff in error, vs. THE STATE, Defendant in error.

*September 15—October 10, 1922.*

*Homicide: Murder in second degree: Driving automobile at dangerous speed: Depravity of mind: Distinction between first and second-degree murder: Trial: Evidence: Sufficiency: Argument to jury.*

1. In a prosecution for murder in the second degree, the rejection of testimony offered by the defendant tending to show that the liquor consumed by him on the day of the crime would not ordinarily intoxicate him was not error, where there was no claim of such a degree of drunkenness as robbed defendant of his powers of volition.

2. Where defendant drove his automobile into a crowd, killing three and injuring two other persons, production on the witness stand of one of the persons injured was not improper, though such witness had lost both legs as the result of the accident.

3. The driving of a large automobile at high speed down a much traveled street and past a standing street car without any regard for the presence of persons about to board the car was an act imminently dangerous to others, evincing "depravity of mind," within the meaning of sec. 4339, Stats., defining second-degree murder.

4. An act committed with a premeditated design to effect death is murder in the first degree; but an act which is merely imminently dangerous to others and evincing a depraved mind, regardless of human life and without premeditated design, is murder in the second degree.

5. Alleged inflammatory and prejudicial remarks of the district attorney to the jury are reviewed, although proper exception had not been made at the trial, and are considered not to be prejudicial in character.

ERROR to review a judgment of the municipal court of Milwaukee county: CHESTER A. FOWLER, Acting Judge. *Affirmed.*

The plaintiff in error, hereinafter called the defendant, is charged with having "on the 19th day of March, 1919, unlawfully, wilfully, and feloniously killed and murdered Lillian Blanchard by an act then and there imminently dangerous to others and evincing a depraved mind, regardless of human life, but without any premeditated design to effect the death of the person, Lillian Blanchard, or any other human being."

The material facts in the case are without substantial dispute. On March 19, 1919, at about 7:30 o'clock p. m., the defendant with four companions left the Hotel Wisconsin, which is situated between Grand avenue and Wells street on Third street, in the city of Milwaukee, in a Hudson Super-six automobile, which was driven by the defendant, and went to a resort on the Blue Mound road. On the afternoon of the same day the defendant had drunk two whisky sours, and at about 6 o'clock p. m. he had drunk two Cascade whiskies. The defendant drove rather fast, and on two occasions one of his companions remonstrated with him for fast driving. At the resort the defendant had a glass of whisky. A chicken dinner was then served and during the meal the defendant drank another whisky. After dinner the defendant visited three other resorts and in each had a drink of whisky. At about 9 o'clock p. m. the party entered the automobile for the pur-

pose of returning to the city. One of his companions suggested to the defendant that the defendant permit him to drive the car, but the defendant refused. The automobile was driven very rapidly toward the city on Grand avenue, and at Twenty-seventh street turned off of Grand avenue onto Wells street and proceeded rapidly eastward at a rate of from thirty to thirty-five miles per hour, although the speed was estimated by some witnesses as high as forty-five to fifty miles an hour. On Wells street there is a double-track street-car line, upon which a street car was proceeding in an easterly direction on the southerly set of tracks.

Mrs. Blanchard, the deceased, had accompanied some guests to the corner of Thirteenth and Wells streets, where her guests were to take the street car. When she and her guests saw the street car approaching from Fourteenth street they stepped out into the street in order to board the car. As they were standing in the street and at a time after the street car had stopped, the automobile operated by the defendant, still proceeding at a high rate of speed, crossed over from the northerly to the southerly side of Wells street, proceeded without any slackening of speed, and struck Mrs. Blanchard, killing her. Two other persons were killed and two other persons injured. As the automobile approached the spot where the injury occurred no horn was sounded or signal given of its approach. The night was clear, the pavement was dry, and a large electric arc light was on the corner. The people standing in the street awaiting the approach of the car were plainly visible for some distance away and were seen by some of the occupants of the automobile, who protested to the defendant and warned him that he would kill the people in the street. The right fender of the automobile was bent, the radiator was caved in, the bumper was broken off, and the headlight was bent back.

After the collision the defendant drove the automobile

back to the garage located between Eleventh and Twelfth
streets.   He went in the garage and told the night man to
bring the car in, stating "I hit someone, Ed.   Will you
please take the car in?"   The defendant then walked down .
to the Hotel Wisconsin, some eight or nine blocks distant,
where he asked to have an attorney called, and upon the
advice of friends went to the police station, and when he
was asked why he did not go back and pick up the people he
replied, "I must have been drunk or crazy."   In a statement
to the police the next morning the defendant stated that
his headlights were lit; that "it seemed as if these people
came right out, cold turkey, in front of the automobile,
right out of the darkness, that's all, bango;" that he was
about fifteen or twenty-five feet from the street car when he
first saw the people in the street; that he realized what hap-
pened and came to the police station.

Upon these facts and upon full and proper instructions
given by the court the jury found the defendant guilty of
murder in the second degree and he was sentenced to the
state prison for fourteen years, the minimum sentence.
To review the record the defendant brings this writ of
error.

For the plaintiff in error there was a brief by *Stover &
Stover* of Milwaukee, and oral argument by *James E.
Stover* and *Harney B. Stover*.

For the defendant in error there was a brief by the *At-
torney General, Winfred C. Zabel,* district attorney of
Milwaukee county, and *George A. Shaughnessy,* assistant
district attorney, and oral argument by *Mr. Zabel* and *Mr.
Shaughnessy*.

ROSENBERRY, J.   No errors are formally assigned in the
brief filed on behalf of the defendant, but from the argu-
ment we deduce the following assignments: First, that the
court erred in rejecting testimony offered by the defend-
ant to show that the amount of liquor consumed on the

afternoon and evening in question would not ordinarily
intoxicate him.    Second, that it was error to permit Mrs.
Kenney, one of the persons injured, to appear upon the
witness stand and give her testimony, for the reason that
it unnecessarily aroused the passions of the jury, she having
had both legs amputated as a result of injuries sustained at
the time and place when and where Mrs. Blanchard was
killed.    Third, that the evidence in the case does not sustain
the verdict for murder in the second degree because the
element, depravity of mind, is not established by the evi-
dence.    Fourth, that the court erroneously permitted the
district attorney to make inflammatory and prejudicial re-
marks to the jury.

(1) The defendant testified upon the trial and has claimed
throughout the course of these proceedings that he was not
intoxicated on the evening in question.    The trial court
permitted full inquiry into the amount of liquor consumed
on the afternoon and evening of March 19th.    Despite the
claim of the defendant that he was not intoxicated, the
jury were fully instructed as to the effect of the defense of
drunkenness and what effect, if any, the voluntary acts of
the defendant in the consumption of liquor in the hours
preceding the injury might have upon their determination.
It is very doubtful at least whether evidence such as was
offered on behalf of the defendant would be material under
any circumstances.    Certainly, where there was no claim of
drunkenness, that is, of such a degree of drunkenness as
robbed the defendant of his powers of volition, the pro-
posed evidence could have no materiality.

(2) It may be assumed that the presence of Mrs. Kenney
in her helpless condition aroused in the minds of the jury
those feelings that under such circumstances are common to
mankind.    However, it does not follow from that that her
production upon the witness stand was improper or evidence
given by her in court inadmissible.    There is not in the
entire case the slightest evidence of any passion or prejudice

on the part of the jury, and a careful scrutiny of the record discloses no grounds of complaint so far as her appearance and testimony is concerned on the part of the defendant.

(3) The argument of the defendant upon the third proposition is not at all times clear and it is difficult to determine what his precise claim is. It would seem to require no argument to show that the act committed by the defendant, to wit, the driving of a large car at high speed down a much-traveled track, by a standing street car, without any regard for the presence of persons who were standing in the street about to board the car, was the commission of an act imminently dangerous to others. It is claimed, however, that it does not evince a depraved mind regardless of human life within the meaning of sec. 4339, Stats.

We shall not enter into a philosophical discussion as to the meaning of this phrase. It is the absence of "a premeditated design to take the life of another" that reduces a homicide, which would otherwise be murder in the first degree, to murder in the second degree. *Hogan v. State,* 36 Wis. 226, 249.

If an act be committed with a premeditated design to effect death it is murder in the first degree, but if it is merely imminently dangerous to others, evincing a depraved mind, regardless of human life and without premeditated design, it is murder in the second degree. It is the state of mind in which one takes the life of another without justification or excuse, but without premeditation, by an act imminently dangerous to others, regardless of human life, that is designated as depraved. The "depravity" referred to is present in murder in the first degree as well as in murder in the second degree. The statute does not mean that the mind of the slayer must be in other respects depraved. *Hogan v. State,* 36 Wis. 226, 245.

It would be difficult to find in all that has been written upon the subject of homicide, as large as the mass of material is, a case which more distinctly illustrates every essential element of the crime of murder in the second

degree than the case at bar. Nothing is wanting here to make the offense murder in the first degree but the element of premeditated design, which element is usually set forth in the information and indictment by the apt use of the words "wilfully and of malice aforethought." *Kilkelly v. State,* 43 Wis. 604; *In re Carlson,* 176 Wis. 538, 186 N. W. 722.

We do not know what extenuating circumstances, if any, there were in the conduct of the defendant. Certainly there is nothing in the record which in any way excuses or mitigates the heinousness of his offense. A group of innocent women and children, upon a public street, in a place where they were lawfully entitled to be, were run down and three of them killed, under circumstances which afford no excuse or justification. The defendant was charged with murder in the second degree and every element of that offense is clearly and indisputably established. As Mr. Justice TIMLIN remarked:

"The time is gone by, if it ever existed, when technicalities or unnecessary refinements can be allowed to stand in the way of the vindication of the law or the punishment according to law of those unquestionably and legally guilty of murder." *Carlone v. State,* 150 Wis. 38, 136 N. W. 153.

(4) The remarks made by the district attorney were not excepted to upon the trial and we find nothing in them of a prejudicial character even if proper exception had been made. No language that the district attorney used or could use could exceed in vigor and force the condemnation which the defendant visited upon himself by his own acts. The acts are of a character which speak more loudly for themselves than mere words, however eloquent and forceful, can do. The defendant had a fair trial, the issues were submitted under full, complete, and carefully prepared instructions of the court, and we find no grounds for disturbing the judgment rendered upon the verdict.

*By the Court.*—Judgment affirmed.