STATE EX REL. NELSON, Appellant, vs. ROCK COUNTY and others, Respondents.

*November 8—December 6, 1955.*

For the appellant there were briefs by *Fisher & Fisher* of Janesville, and oral argument by *Cleland P. Fisher*.

For the respondents there was a brief by *Joseph B. Forrestal,* district attorney, and oral argument by *Mr. Forrestal* and by *Mr. Mark J. Farnum,* both of Janesville.

CURRIE, J.   It appears from the petition and the return that the defendant County Welfare Department refused cash relief to the relator Nelson, but in lieu thereof had offered to provide him with a nourishing diet, housing which is adequate for health and decency, medical care, dental care,

and all other necessities of life at the Rock County Home. The reason advanced for such refusal to provide cash relief is Nelson's alleged intemperate drinking and spendthrift habits.

That Nelson is a "dependent person" as defined by sec. 49.01, Stats.,[1] and entitled to relief from the defendant County Welfare Department, is conceded. The issue on this appeal is whether the defendant County Welfare Department has complied with the requirements of ch. 49, Stats., in offering to provide Nelson with housing, food, medical and dental care, and all the other necessities of life, at the county home without first obtaining a court order committing him to such home. It is the contention of Nelson's counsel that, in the absence of such an order of commitment, the provisions of sec. 49.02 (1)[2] make it mandatory upon the defendant County Welfare Department to provide Nelson with relief through the disbursement of cash paid either directly to him or to those with whom the department contracts to supply him with housing, food, medical and dental care, and the other necessities of life.

---

[1] Sec. 49.01 provides in part as follows: "As used in chapter 49: (1) 'Relief' means such services, commodities or money as are reasonable and necessary under the circumstances to provide food, housing, clothing, fuel, light, water, medicine, medical, dental, and surgical treatment (including hospital care), optometrical services, nursing, transportation, and funeral expenses, and include wages for work relief. The food furnished shall be of a kind and quantity sufficient to provide a nourishing diet. The housing provided shall be adequate for health and decency. . . .

"(4) 'Dependent person' or 'dependent' means a person without the present available money or income or property or credit, or other means by which the same can be presently obtained, sufficient to provide the necessary commodities and services specified in subsection (1)."

[2] Sec. 49.02 (1) reads: "Every municipality shall furnish relief to all dependent persons therein and shall establish or designate an official or agency to administer the same."

Sec. 49.14 (1), Stats., provides: "Each county may establish a county home for the relief and support of dependent persons pursuant to section 46.17." Sec. 46.17 confers upon the state department of public welfare the responsibility of fixing the "reasonable standards and regulations for the design, construction, repair, and maintenance of county homes, . . . with respect to their adequacy and fitness for the needs which they are to serve," and of semiannually inspecting such homes "with respect to safety, sanitation, adequacy, and fitness." Courts of record are authorized by sec. 49.15 (1) to commit a person to such a county home upon a showing by petition that such person "is without a home or necessary care or is living in a state of filth and squalor likely to induce disease." In addition to such involuntary method of commitment, sec. 49.15 (2) authorizes voluntary admittance upon application subject to such terms as the board of trustees of the home may prescribe.

We fail to see how the legislature, in enacting sec. 49.14 (1), Stats., could have stated any more clearly than it has done, that a county may discharge its obligation to provide dependent persons with relief and support through the instrumentality of a county home. If the provisions of secs. 49.01 (1) and 49.14 (1) be construed together such conclusion is inescapable.

If in the instant case the defendant Welfare Department had offered to supply Nelson with suitable housing and food in a privately owned boarding house to be paid for by county disbursements made directly to the operator of such boarding house, Nelson could not successfully maintain a mandamus proceeding to require the defendants to provide him with cash relief. This is because sec. 49.01 (1), Stats., specifically authorizes the furnishing of relief in the form of "services" and "commodities" as an alternative to "money" payments

directly to the dependent person. We fail to see how any distinction can be made under these statutes between offering to provide Nelson with suitable housing and food at the county home and tendering the same type of relief through the facilities of a privately operated boarding house.

In view of the procedure specified in sec. 49.15 (2), Stats., for the voluntary admittance of persons to the home, we consider that the defendants were not required to proceed to have Nelson committed to the home by court order under the provisions of sec. 49.15 (1) as a condition precedent to making relief available to him in the form of enjoyment of the facilities of the county home. While the petition and return are silent as to whether the board of trustees of the county home would have admitted Nelson to the home under the offer made by the defendant County Welfare Department through its director, we must assume on this appeal that such board would have done so. This is because of the presumption that public officers have properly discharged the duties of their office. 43 Am. Jur., Public Officers, p. 254, sec. 511, and *Bohn v. Sauk County* (1954), 268 Wis. 213, 219, 67 N. W. (2d) 288. The director of the County Welfare Department would not have properly discharged his duties if he had offered to provide Nelson with relief at the county home without first clearing with the trustees the matter of the admission of Nelson to the home if the latter accepted the offer.

Appellant's brief cites the case of *State ex rel. Wilson v. Weir* (1938), 106 Mont. 526, 79 Pac. (2d) 305, as an authority in point on the issue before us on this appeal. In that case the Montana statutes made it mandatory for the board of county commissioners to provide a dependent person, such as the relator Wilson, with relief in the form of cash. The only statutory exception was that if a relief recipient was "in the habit of dissipating the relief allowance," the allowance might

be discontinued and relief provided in the form of disbursing orders. Without any claim that Wilson had ever dissipated any relief allowance, but because the county had run out of relief funds, the county placed him in the county poor farm. This clearly was a violation of the Montana statutes and the Montana court so held. We consider the case to be clearly distinguishable both as to the facts and as to the provisions of the applicable statutes.

There is raised in appellant's reply brief a constitutional issue which was not raised in the court below. Such issue is whether a statute which would permit a county welfare department to extend relief to some dependent persons by cash allowances and deny such type of relief to other persons, who would be obliged to accept sustenance and care at the county home, violates the equal-protection-of-the-laws clause of the Fourteenth amendment to the United States constitution. However, it is the rule of this court that it ordinarily will not consider a question of constitutionality which has been raised for the first time on appeal. *C. F. Trantow Co. v. Industrial Comm.* (1952), 262 Wis. 586, 590, 55 N. W. (2d) 884; and *Baker v. Leenhouts* (1950), 257 Wis. 584, 588, 44 N. W. (2d) 544. We perceive no reason why we should depart from such rule in the instant case.

*By the Court.*—The order appealed from is affirmed.