SHADOW LAWN SCHOOL DISTRICT NO. 3, Appellant, v. WALWORTH COUNTY SCHOOL COMMITTEE, Respondent.*

*December 1, 1966—January 3, 1967.*

* Motion for rehearing denied, without costs, on February 28, 1967.

334

For the appellant there was a brief by *Christians & Cusack* of Lake Geneva, and oral argument by *John W. Cusack*.

For the respondent there was a brief by *Godfrey, Godfrey, Neshek & Conway* of Elkhorn, and oral argument by *Dennis D. Conway*.

BEILFUSS, J.   The parties state the issues to be:

(1)   Did respondent, Walworth County School Committee, abuse its discretion by issuing an order from a petition, which was "essentially similar" to a petition acted upon by respondent during the same year?

(2)   Was the order of the respondent dated June 29, 1965, void as arbitrary and capricious abuse of power?

(3)   Is sec. 40.03 (6) (a), Stats., unconstitutional and void because it deprives the electors in the "affected" area the right to vote?

The statutory provisions which govern school district reorganization, as they apply to the first issue, are as follows:

"40.03   **School district reorganization.** (1) PETITION, HEARING, ORDER.   Upon the filing of a petition by 10 per cent of the electors residing in the area of a proposed reorganized district or 10 per cent of the electors of an area proposed to be detached from one district and attached to another *or upon a resolution adopted upon its own motion,* the county school committee may order the reorganization of school districts within the county, subject to the referendum provisions of sub. (6).   The secretary of the committee shall set a date for a *public hearing* on the proposed reorganization which *shall be held not more than 30 days after the filing of the petition or the date on which the committee ordered such a hearing when the committee initiated the proceedings,* at a place within the district proposed to be reorganized or within a reasonable distance of such district. . . .

"(a)   If the county school committee *determines* that a *petition* filed under this subsection is identical with or essentially similar to a petition on which it has acted during the past year, *it may* set the date for a hearing approximately one year from the date on which it held its last hearing on the matter. . . ." (Italics supplied.)

Relying on the provisions of sec. 40.03 (1) (a), Stats., appellant contends that respondent abused its discretion by issuing an order from its own resolution, which resolution was "essentially similar" to a petition upon which respondent had acted *during the same year,* to wit: January 11, 1965.

Sec. 40.03 (1) (a), Stats., by its terms does not refer to a *resolution* but to a *petition.*

"These provisions in sec. 40.03 (1) (a) were designed and enacted to furnish county school committees with a means of deterring the filing of repetitive *petition.* The sponsors thereof indicated that such was its purpose." (Emphasis supplied.) 50 Op. Atty. Gen. (1961), 209, 210, 212.

The order issued in the instant case was pursuant to a resolution of respondent county committee. The petition was no longer in being, inasmuch as it had been expressly denied at the June 1st hearing because a hearing thereon was not held within thirty days after the petition was submitted. This being so, sec. 40.03 (1) (a), Stats., is inapplicable.

Assuming the resolution substantially restated the petition of April 28th and is treated as a petition, the action of respondent still does not constitute an abuse of discretion. Sec. 40.03 (1) (a), Stats., requires the committee to determine whether the petition before it is identical or essentially similar to a petition on which it has acted during the past year. *Joint School Dist. v. Joint County School Comm.* (1964), 23 Wis. (2d) 219, 127 N. W. (2d) 258. The record in the instant case is devoid of such a determination. Further, an examination of the record reveals that the petition acted upon by respondent in January was for *dissolution* of the entire district; the April petition (and the resolution) was for *detachment and attachment* of a part of the district. Hence they fail to meet the "identical" or "essential similarity" test.

Finally, even if sec. 40.03 (1) (a), Stats., did apply to resolutions and the "identical" or "essential similarity" test was met, respondent would not be required to set the hearing "approximately one year" from January 11, 1965. The statute is drafted in *permissive* not *mandatory* terms. It states:

"[the committee] *may set* the date for a hearing approximately one year from the date on which it held its last hearing on the matter." (Italics supplied.)

In view of the permissive language of the statute it cannot be said that respondent's action was "unreasonable" or without "rational basis." [1]

Was respondent's order of June 29, 1965, an arbitrary and capricious abuse of power?

From the record it appears that the educational staff and students in Shadow Lawn district at the time of the resolution were as follows:

    1st grade—one teacher—18 children
    2nd grade—one teacher—19 children
    3rd & 4th grades—one teacher—28 children
    5th & 6th grades—one teacher—28 children
    7th & 8th grades—one teacher—28 children

The physical plant consists of a gym, five classrooms and three acres of space with swings, slides, baseball diamond and blacktopped playground. Of the five classrooms, only four are "approved."

Appellant's contention that the order of June 29, 1965, is an arbitrary and capricious abuse of power is predicated on the following facts. The order to detach includes 75 percent of the assessed valuation of Shadow Lawn School District No. 3 and will operate to take from the district 55 of its 122 students. Of a total *equalized* valua-

---

[1] "Arbitrary or capricious action on the part of an administrative agency occurs when it can be said that such action is unreasonable or does not have a rational basis." *Olson v. Rothwell* (1965), 28 Wis. (2d) 233, 239, 137 N. W. (2d) 86.

tion of $8,875,500 the detached area would take away $6,530,289, leaving only $2,345,211 in the remaining district. Respondent asserts that since the latter monetary figures are not included in the record they may not be considered by this court. A careful examination of the record reveals, however (at page 253), that the "equalized valuation . . . is almost 9 million dollars. . . ." The order of detachment would leave "2 million dollars" in the remaining district.

The crux of appellant's argument is that the order results in "more than an unreasonable hardship on the area remaining after detachment" and that the remnant area is so small that it cannot bear the tax burden and cannot successfully operate as a school district. It is asserted further that the committee in adopting the order did not follow the process of "sifting and winnowing" which this court in *Olson v. Rothwell, supra,* indicated was one criterion of reasonableness.

It is elementary that "the burden [of proving an] abuse of discretion is upon the appellant . . . ." [2] In *Reinders v. Washington County School Comm.* (1962), 15 Wis. (2d) 517, 113 N. W. (2d) 141, this court stated, at page 526:

". . . How boundaries in school districts should be changed is not a judicial determination but one of policy delegated by the legislature to the reorganization authority . . . The disappointment and disagreement of some electors with the decision of the County School Committee do not prove an abuse of discretion. . . ."

Three relatively recent cases have dealt with the question presented by this facet of the instant appeal. The first two are cited and discussed briefly in the third case, *Iron River Grade School Dist. v. Bayfield County School Comm.* (1966), 31 Wis. (2d) 7, 142 N. W. (2d) 227. In *Zawerschnik v. Joint County School Comm.* (1955), 271

[2] *Joint School Dist. v. Joint County School Comm.* (1964), 23 Wis. (2d) 219, 229, 127 N. W. (2d) 258.

Wis. 416, 73 N. W. (2d) 566, the appellants maintained that an order detaching 77.53 percent of the tax base was arbitrary, unreasonable and confiscatory. They argued that the order left a remnant district which would be "burdened by excessive taxes;" that the order would result in "financial ruin" of the district and that the remaining tax base was "insufficient to maintain a substantial administrative school district." This court held, at page 427:

"Whether the boundaries of a school district should be changed is not a question of law or fact for judicial determination, but purely a question of policy, to be determined by the legislative department. Such a matter presents a question of political expediency for the legislative department. The courts have nothing to do with the policy, wisdom, justice, or fairness of such matters. They present questions for the consideration of those to whom the state has intrusted its legislative power, and their determination of them is not subject to review or criticism by the courts. *State ex rel. Zilisch v. Auer* (1928), 197 Wis. 284, 221 N. W. 860, 223 N. W. 123."

*State ex rel. Grant School Dist. v. School Board* (1958), 4 Wis. (2d) 499, 91 N. W. (2d) 219, involved four successive annexations. The appellants therein complained that annexation took 80 percent of the equalized value of the district and "[denied] a proper education to the children in the remaining district." This court stated, at page 511:

"These allegations have nothing to do with defects in proceedings taken under the statute but constitute complaints with respect to the *results* of such proceedings and, as such, are not matters of judicial concern." (Emphasis supplied.)

In *Iron River Grade School Dist. v. Bayfield County School Comm., supra,* an appeal was taken from an order which attached 30¼ sections of the appellant, Iron River School district, to the South Shore district and left only five and three-fourths sections in the appellant district.

The order left the appellant district with one sixth of its original area and approximately one third of its valuation but required it to provide an education for approximately 92 percent of the students of the original district. The sole contention of the appellant district was that the order of the county school committee, which left the remaining territory with a tax base insufficient to raise taxes necessary to operate its schools, was "unreasonable and arbitrary." In *Iron River* we stated, at pages 13, 16 and 17:

". . . a realistic comparison of the anticipated revenues to budgeted expenses can only lead to the conclusion that it will be financially impossible to continue operating the school system.
". . .
". . . the reasonableness of the action cannot be determined from the result alone. As we said in *Olson v. Rothwell, supra,* page 238, 'We do not consider the effect of the exercise of power necessarily determines the character of its exercise.' . . .
". . .
"While it may be acknowledged that the order casts, temporarily at least, additional and perhaps insuperable burdens upon the remnant of the district; yet, considering the obligation of the committee to its legislative mandate and to the electors of the detached area, it cannot be said that the determination was not at the very least 'fairly debatable.' "

Although the record in this case is not nearly as factually replete as the record in the above cited case, on the facts presented here the determination was "at the very least fairly debatable."

The trial court correctly stated:

"How boundaries in school districts should be changed is not a judicial determination. The disappointment and disagreement of some electors with the decision of the County School Committee do not prove an unlawful abuse of discretion. . . .

"One must keep in mind that the Court is not to review the wisdom or advisability of the order. See [*Perkins v. Peacock* (1953), 263 Wis. 644, 58 N. W. (2d) 536; *Gerbitz v. Joint County School Comm.* (1957), 274 Wis. 396, 80 N. W. (2d) 377.] . . ."

We conclude the county committee did not act in an arbitrary and capricious manner.

Respondent in its brief stated that a referendum was held June 8, 1966, on the order of June 29, 1965. The order was approved. This is not a matter of record in this case, but it is a matter of public record. The appellant contends the referendum statute, sec. 40.03 (6) (a), Stats., is unconstitutional because it deprives the electors in the "affected" area of the right to vote.

There are sound reasons for not considering the above question on this appeal.

Sec. 40.03 (5), Stats., provides in part:

"APPEAL. Any person aggrieved by an order may appeal therefrom to the circuit court of any county in which any territory of the reorganized district lies, by serving written notice of such appeal, *stating specifically the grounds upon which it is based,* . . ." (Italics supplied.)

The appeal to the circuit court does not refer to the alleged unconstitutionality of sec. 40.03 (6), Stats.

Sec. 269.56 (11), Stats., provides in part:

". . . In *any* proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the *statute,* ordinance or franchise is alleged to be unconstitutional, the attorney-general of the state shall also be served with a copy of the proceeding and be entitled to be heard." (Emphasis supplied.)

The record is also devoid of compliance with this statute.

The issue is being raised for the first time on this appeal. In *Wisconsin Power & Light Co. v. Dean* (1957),

275 Wis. 236, 242, 81 N. W. (2d) 486, with respect to raising a constitutional issue for the first time on appeal, we stated:

"It is the rule of this court that it ordinarily will not consider the question of constitutionality which has been raised for the first time on appeal but will deem that any such right which may have existed was waived by failure to raise it early in the proceeding before the trial court. *State ex rel. Nelson v. Rock County,* 271 Wis. 312, 317, 73 N. W. (2d) 564; *Baker v. Leenhouts,* 257 Wis. 584, 44 N. W. (2d) 544; certiorari denied, 341 U. S. 945, 71 Sup. Ct. 1019, 95 L. Ed. 1370."

There is no compelling reason for departing from this rule in this case.

*By the Court.*—Order affirmed.

CURRIE, C. J., took no part.