STATE, Respondent, v. WESO, Appellant.

*No. State 104. Argued September 10, 1973.—Decided October 2, 1973.*
(Also reported in 210 N. W. 2d 442.)

For the appellant there was a brief by *Ruth S. Downs* and *Stuart A. Schwartz,* Wisconsin Indian Legal Services, of Madison; a reply brief by *Raymond H. Thoenig,* Wisconsin Indian Legal Services chief counsel, of Madison; and oral argument by *Mr. Thoenig.*

For the respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J.   The main question raised on this appeal is whether the evidence is sufficient to prove beyond a reasonable doubt that Weso's conduct evinced a "depraved mind" as that term is used in sec. 941.30, Stats.

The conduct out of which the conviction arose involved a knife slashing of the face of John Martin in the early morning hours of May 1, 1972. There is some conflict

in the testimony but essentially the facts are that on the 9th of April, 1972, Weso, John Martin, and James La Rock were in a tavern in the village of Keshena. Weso was not with Martin and La Rock and left the tavern earlier than they did. When the tavern closed about 2 a. m., Martin and La Rock drove a girl to her home and as they neared the intersection of Routes 55 and 47, they saw Weso in the yard talking to a friend Allan Loudbear. They stopped the car and Martin got out to talk to Weso and Loudbear. This conversation lasted about an hour during which whisky and brandy were drunk. When Weso turned to leave the group, Martin ran after him for the purpose of starting a fight, bringing up a fight of some years earlier in which Weso had beaten Martin. Both men took a fighting stance and some preliminaries took place. Then Weso turned and ran down the road with Martin chasing him.

Martin testified he felt a sting across his face while they squared off to fight. Weso testified he continually tried to avoid a fight but Martin struck him on the lip. He also warned Martin to stop fighting but Martin continued his aggressive behavior. Weso testified he then took out his small pocket knife, opened it and swung at Martin to frighten him and then ran off. One of the witnesses testified that after Weso and Martin squared off, Weso warned Martin in effect to leave him alone or he would kill Martin. The question is whether these facts evince a depraved mind.

Although Weso was charged under sec. 940.23, Stats.,[1] but convicted under sec. 941.30,[2] no question is raised;

[1] "940.23 **Injury by conduct regardless of life.** Whoever causes great bodily harm to another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be imprisoned not more than 10 years."

[2] "941.30 **Endangering safety by conduct regardless of life.** Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be fined not more than $1,000 or imprisoned not more than 5 years or both."

probably because these two sections are identical in their elements of the crimes with the exception that sec. 940.23 has the element of causing great bodily harm while sec. 941.30 requires only the endangering of another's safety. In *Martin v. State* (1973), 57 Wis. 2d 499, 204 .N. W. 2d 499, this court recognized these two sections were identical with the exception of the distinction in the description of the resultant harm. Consequently, the offense under sec. 941.30 is a lesser included offense of the crime created by sec. 940.23 and Weso could be convicted of the lesser crime even though he had been charged with and pleaded not guilty to the greater crime. Sec. 939.66 (1) ; *Geitner v. State* (1973), 59 Wis. 2d 128, 207 N. W. 2d 837.

The element of a depraved mind used in secs. 940.23 and 941.30, Stats., also appears in sec. 940.02,[3] defining the crime of second-degree murder. We have no reason to believe the term is used differently in these sections. In respect to "depraved mind" in second-degree murder, we stated in *Montgomery v. State* (1922), 178 Wis. 461, 190 N. W. 105, that it was the same state of mind required in first-degree murder without the premeditated design to take the life of another and without justification or excuse by an act imminently dangerous to another regardless of human life. The exclusion of premeditated design does not, of course, explain the remaining elements which constitute a depraved mind. In *Montgomery* the court found such a state of mind evinced by the action of driving an auto at a high rate of speed on a much-traveled street and proceeding to pass a stopped streetcar without regard for the safety of the persons boarding the streetcar. *Montgomery* relied on *Hogan v. State*

[3] "940.02 **Second-degree murder.** Whoever causes the death of another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be imprisoned not less than 5 nor more than 25 years."

(1874), 36 Wis. 226, which stated the qualities of the act as imminently dangerous and evincing a depraved mind regardless of human life are to be found in the act itself and the circumstances of its commission. *See State v. Weltz* (1923), 155 Minn. 143, 193 N. W. 42.

The lack of premeditated design was stated not to be necessary to a depraved mind in *Walsh v. State* (1928), 195 Wis. 540, 218 N. W. 714, without citing *Montgomery* and in *Zenou v. State* (1958), 4 Wis. 2d 655, 668, 91 N. W. 2d 208, which quoted *Montgomery*. In *State v. Johnson* (1940), 233 Wis. 668, 290 N. W. 159, this court pointed out that a depraved mind as an element of the crime of second-degree murder was a self-created condition of the mind and was to be distinguished from insanity and feeblemindedness. In *State v. Dolan* (1969), 44 Wis. 2d 68, 73, 170 N. W. 2d 822, this court affirmed a conviction under sec. 941.30, Stats., and referred to Wisconsin J I—Criminal, Part II, 1345. In *Dolan,* the defendant had chased Hoff into a tavern operated by Hering. Dolan had a butcher knife in his hand which Hering grabbed and took away from Dolan. Dolan then turned and grabbed a paring knife lying on the bar nearby and thrust it against Hering's throat as he lay on the floor and threatened Hering that if he did not give back his knife he would cut Hering's throat. The act was held to be sufficient to sustain the conviction as constituting conduct imminently dangerous to the safety of another. The court, however, did not explain or discuss the element of depravity of the mind as that issue was not specifically raised.

A "depraved mind" has been variously defined in cases in other states and has been said to be a mind which may be inflamed by liquor and passion to such a degree that it ceases to care for human life and safety. *State v. Weltz* (1923), 155 Minn. 143, 193 N. W. 42. A depraved mind within a second-degree-murder statute has

been said to import "malice" in a popular sense of ill-will, hatred, spite, and evil intent. *Ramsey v. State* (1934), 114 Fla. 766, 154 So. 855. But it was held in *Ramsey* that the evidence of a father shooting a guest after the guest showed indecent conduct toward the daughter was insufficient to show a depraved mind. A depraved mind is one having an inherent deficiency of moral sense and rectitude.[4] Otherwise it would not prompt an act which in its nature is imminently danger-ous to the safety of another. The element of the disre-gard for life likewise calls for a state of mind which has no regard for the moral or social duties of a human being.

A depraved mind must be indifferent to the life of others. Such negative attitude is not found in the mind of a normal, reasonable person. The desire to live and the recognition others desire to live and have a right to life is innate in the mind of a normal person. Mere neg-ligence alone is not sufficient. A high degree of negli-gence may be an element. Such degree of negligence is an element of homicide by negligent use of a vehicle or weapon in sec. 940.08, Stats., and is defined in sub. (2) as follows:

"(2) A high degree of negligence is conduct which demonstrates ordinary negligence to a high degree, con-sisting of an act which the person should realize creates a situation of unreasonable risk and high probability of death or great bodily harm to another."

Likewise, recklessness alone is not sufficient. Such con-duct if it endangers another's safety in the handling of a weapon such as a firearm or knife is a crime under

---

[4] *See Ramsey v. State, supra; Young v. Prather* (1970), 120 Ill. App. 2d 395, 256 N. E. 2d 670; *Stalder v. Stone* (1952), 412 Ill. 488, 107 N. E. 2d 696; *State v. Greer* (Mo. App. 1958), 311 S. W. 2d 49; *State v. Farrell* (Mo. App. 1951), 237 S. W. 2d 492; 26A C. J. S., pp. 491, 492, *Depravity.*

sec. 941.20, Stats., and if death results, it constitutes homicide by reckless conduct under sec. 940.06. Reckless conduct is defined in secs. 940.06 (2) and 941.20 (3) as:

"(2) Reckless conduct consists of an act which creates a situation of unreasonable risk and high probability of death or great bodily harm to another and which demonstrates a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury. It is intended that this definition embraces all of the elements of what was heretofore known as gross negligence in the criminal law of Wisconsin."

To constitute a depraved mind, more than a high degree of negligence or recklessness must exist. The mind must not only disregard the safety of another but be devoid of regard for the life of another. In addition, to constitute the crime of endangering the safety of another under sec. 941.30, Stats., there must be an actual endangering of another's safety. But such endangering could be caused by accident or other means than a depraved mind. The statute requires this danger be caused by conduct which in itself is imminently dangerous to another person and such conduct must evince a depraved mind under the circumstances. The statute gives one element of a depraved mind, namely, a disregard for human life. It is not necessary that the proof show a depraved mind in fact in the accused; it is sufficient that the conduct of the accused evinces or shows a state of mind which is generally considered by mankind to be a depraved mind. "Depraved" as a verb means to pervert and as an adjective it means "marked by debasement, corruption, perversion, or deterioration." Webster's, *International Dictionary* (3d ed.). Certainly a depraved mind is not the normal state of mind of a reasonable person. A depraved mind lacks a moral sense, an appreciation of life, is unreasonable and lacks judgment. A depraved mind has a general intent to do the

acts and the consciousness of the nature of the acts and possible result but lacks the specific intent to do the harm. Weso's argument that he intended only to frighten Martin is invalid.

Weso argues all the cases heretofore decided by this court involving convictions under sec. 941.30, Stats., are distinguishable because the acts involved were without reason or justification. Wis J I—Criminal, Part II, 1345, refers to the conduct as being without justification or excuse, and Weso argues any justification or excuse is sufficient and he need not establish a legally cognizable case for self-defense in order to negate the evincing of a depraved mind. We think Weso's argument goes too far. The lack of any excuse, justification or provocation for conduct imminently dangerous to another prompted by a mind without regard for human life and which conduct in fact endangers the safety of another would evince to a greater degree or at least more positively a depraved mind. Justification and excuse must bear some reasonable relationship to the conduct imminently dangerous to another. Provocation does not necessarily or normally call for a violent reaction in a reasonable man in every case. While Weso might have stopped the fight by hitting Martin with his fist and such might be considered a reasonable reaction to Martin's aggressiveness, still the excessiveness of Weso's conduct in withdrawing a knife, opening it, aiming it at a vital spot and then slashing Weso or attempting to scare him with such action is not reasonable conduct assuming Weso was provoked by Martin's desire to fight. The excessiveness of the conduct in relation to its purpose, the nature of the conduct and the disregard for the possible result of such conduct evinces an unreasonable mind in that it lacked balance, a moral sense, and judgment and hence was depraved.

Weso also raises the question of whether sec. 941.30, Stats., violates the due-process clause because the sec-

tion was so vague in the meaning of depravity that it failed to give him reasonable notice of the elements of the crime. This question was not raised at the trial level and it has long been the rule that the constitutionality of a statute normally cannot be raised for the first time on appeal as a matter of right. *State v. Weidner* (1970), 47 Wis. 2d 321, 323, 177 N. W. 2d 69; *Stacy v. Ashland County Department of Public Welfare* (1968), 39 Wis. 2d 595, 606, 159 N. W. 2d 630; *Shadow Lawn School Dist. v. Walworth County School Comm.* (1967), 33 Wis. 2d 333, 343, 344, 147 N. W. 2d 227, citing *Wisconsin Power & Light Co. v. Dean* (1957), 275 Wis. 236, 242, 81 N. W. 2d 486; *State ex rel. Nelson v. Rock County* (1955), 271 Wis. 312, 317, 73 N. W. 2d 564; *Baker v. Leenhouts* (1950), 257 Wis. 584, 44 N. W. 2d 544, certiorari denied (1951), 341 U. S. 945, 71 Sup. Ct. 1019, 95 L. Ed. 1370.

There are exceptions involving the jurisdiction of the subject matter or public policy, but we do not consider the facts of this case come within either one of the exceptions. Nor do we think there is sufficient arguable merit in the contention we should consider and discuss it under our power of discretionary reversal in the interest of justice.

*By the Court.*—Judgment affirmed.