STATE of Wisconsin, Plaintiff-Respondent,

v.

Billy Jo BLANCO, Defendant-Appellant.†

Court of Appeals

*No. 84–2142–CR. Submitted on briefs May 7, 1985.—
Decided June 12, 1985.*
(Also reported in 371 N.W.2d 406.)

For the defendant-appellant the cause was submitted on the briefs of *Ruth S. Downs,* assistant state public defender, of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Marguerite M. Moeller,* assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

† Petition to review denied.

SULLIVAN, J. Billy Jo Blanco (Blanco) appeals from a judgment and order of the circuit court finding him not guilty by reason of mental disease or defect of two counts of endangering safety by conduct regardless of life in violation of sec. 941.30, Stats., and ordering him committed to a mental health facility. Blanco disputes the trial court's underlying finding that he violated the aforementioned statute. Blanco argues that the state did not prove beyond a reasonable doubt that he was conscious of the nature of his acts and the potential for harm and that, therefore, there was no proof of the depraved mind element of the crime of endangering safety. We hold that the state was not required to prove Blanco's subjective consciousness of the nature of his acts and their possible result but rather only that his objective conduct manifested a depraved mind. We affirm the judgment and the order of commitment.

It is undisputed that Blanco set fires in his jail cell in the Milwaukee House of Correction on May 3, 1983, and again on June 5, 1983. Officer Frittitta testified at trial that on May 3, 1983, he smelled smoke and then noticed smoke coming from cellblock A, where Blanco was confined. Officer Frittitta then heard some of the approximately thirteen inmates in that block yelling, "Fire!" The officer walked in the direction of the smoke and came upon Blanco's cell, where he observed a fire. He saw Blanco walking back and forth, mumbling and smiling. Blanco's mattress, sheet and blanket were on fire. As officer Frittitta operated a fire extinguisher, Blanco threw cups of urine and feces at the officer. Blanco had been storing the waste material for days. Officer Frittitta described Blanco as grinning and talking to himself. The area of the jail in which Blanco was confined at the time of the fire was one reserved for persons being observed for possible mental problems. As officer Frittitta was trying to put out the

fire, he had trouble breathing and noticed that other inmates were having the same difficulty. Blanco made no attempt to avoid the smoke or flames.

A similar incident took place on June 3, 1983. Officer James testified that on that date he noticed smoke coming from cellblock A. There were nine or ten inmates in that immediate section and about fifty in the general area, all locked in their cells. Officer James crawled beneath the dense smoke to reach the cellblock and found the flames coming from a mattress, sheet, blanket and some clothing articles in Blanco's cell. The officer observed Blanco walking back and forth and hopping up and down. Blanco was smiling, laughing and speaking to himself in a sing-song way, referring to himself as "Superman" and using the Spanish words, "fuego" and "bueno," which mean "fire" and "good." Blanco did nothing to avoid the smoke or the flames, which reached to the ceiling.

In a trifurcated trial to the court Blanco was found guilty in the first phase of two counts of endangering safety by conduct regardless of life. *See* sec. 941.30, Stats. In the second phase Blanco was found not guilty by reason of mental disease or defect. In the third phase he was found to be dangerous to himself and others. The court ordered Blanco committed. This appeal followed.

Blanco argues the state did not prove beyond a reasonable doubt every element constituting the crime with which he was charged. *See In re Winship,* 397 U.S. 358, 364 (1970). He contends the state failed to prove the "depraved mind" element of sec. 941.30, Stats.

Section 941.30, Stats., provides that "[w]hoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, is guilty of a Class D felony." Blanco concedes that the section "does not expressly require proof that the conduct show that the accused

was conscious of the nature of his act and its possible result." Blanco contends, however, that the term, "depraved mind," has a technical meaning, developed by case law, under which a consciousness of the nature and possible result of the dangerous acts is a prerequisite to conviction.

Blanco relies primarily on the following passage from *State v. Weso,* 60 Wis. 2d 404, 411–12, 210 N.W.2d 442 446 (1973) : "A depraved mind has a general intent to do the acts and the consciousness of the nature of the acts and possible result but lacks the specific intent to do the harm." Taken out of context, the above statement arguably could be read as authority for the proposition advanced by Blanco that the depraved mind element requires proof of the defendant's subjective awareness of the nature of his or her acts, and not simply proof of conduct evincing a depraved mind.

Other arguable authority for the proposition may be found in the supreme court's approval of the admission of prior conduct evidence to establish the depraved mind elements of both endangering safety by conduct regardless of life, *see State v. Kuta,* 68 Wis. 2d 641, 644–45, 229 N.W.2d 580, 582 (1975), and injury by conduct regardless of life under sec. 940.23, Stats., *see Hammen v. State,* 87 Wis. 2d 791, 798–99, 275 N.W.2d 709, 713 (1979). The supreme court's approval of other crimes evidence to prove state of mind in the context of the depraved mind element of two offenses could be taken to imply that the depraved mind element requires proof of the accused's subjective mental state.

The most recent arguable suggestion that the depraved mind element requires proof of the accused's subjective disregard for life may be found in *Hagenkord v. State,* 100 Wis. 2d 452, 484–85, 302 N.W.2d 421, 437–38 (1981) : "[T]he 'depraved mind' element imports a state of mind which, although less than specific intent, is more criminally culpable than negligence because of its offensive

and shocking nature. It is a heinous type of *mens rea* which constitutes a distinct and blameworthy element of three statutory crimes." (Footnote omitted.)

The above passages, when taken out of context, appear to offer support for Blanco's position that a defendant charged with endangering safety by conduct regardless of life must be shown to have been conscious of the nature of, and possible harm resulting from, his or her acts. Nevertheless, a thorough review of the relevant case law and model jury instruction convinces us that the depraved mind element of sec. 941.30, Stats., may be established objectively by proof of conduct evincing a depraved mind.

An extensive discussion of the depraved mind element may be found in *Weso,* 60 Wis. 2d at 408–12, 210 N.W.2d at 444–46. *Weso* stands for the proposition that the qualities of an act which show a depraved mind are to be found in the act itself and the circumstances of its commission. *Id.* at 408–09, 210 N.W.2d at 444 (citing *Montgomery v. State,* 178 Wis. 461, 190 N.W. 105 (1922) and *Hogan v. State,* 36 Wis. 226 (1874)).

A depraved mind, as an element of an offense, is a self-created condition of the mind and is to be distinguished from insanity and feeblemindedness. *Weso,* 60 Wis. 2d at 409, 210 N.W.2d at 444. "A depraved mind must be indifferent to the life of others." *Id.* at 410, 210 N.W.2d at 445. Conviction under sec. 941.30, Stats., requires that another's safety be endangered "by conduct which in itself is imminently dangerous to another person and such conduct must evince a depraved mind under the circumstances." *Id.* at 411, 210 N.W.2d at 445. *"It is not necessary that the proof show a depraved mind in fact in the accused; it is sufficient that the conduct of the accused evinces or shows a state of mind which is generally considered by mankind to be a depraved mind." Id.* at 411, 210 N.W.2d at 446. (Emphasis added.)

The term, "depraved mind," has the same meaning in both the endangering safety and second-degree murder statutes. *Id.* at 408, 210 N.W.2d at 444. In *Jones v. State,* 70 Wis. 2d 41, 233 N.W.2d 430 (1975), and *Wagner v. State,* 76 Wis. 2d 30, 250 N.W.2d 331 (1977), the supreme court stated that the second-degree murder statute does not require proof of a particular state of mind in the accused: "The statute does not require the existence of a[ny] particular state of mind in the actor at the time of the crime but only requires that there be conduct imminently dangerous to human life, which conduct evinces a depraved mind." *Jones,* 70 Wis. 2d at 49, 233 N.W.2d at 435; *Wagner,* 76 Wis. 2d at 48, 250 N.W. 2d at 341. "The qualities of conduct which render it imminently dangerous and evincing a depraved mind regardless of life are to be found in the conduct itself *and* in the circumstances of its commission." *Wagner,* 76 Wis. 2d at 44–45, 250 N.W.2d at 339 (emphasis in original). "[T]he only intent necessary for the purposes of establishing the element of 'depraved mind' is the intent to do the act and not the intent to cause any harm." *Id.* at 47, 250 N.W.2d at 341.

We are bolstered in our conviction that a defendant's objective conduct is sufficient to demonstrate the element of a depraved mind by the model jury instruction for sec. 941.30, Stats. That instruction, Wis J I—Criminal 1345, illustrates that the focus of the depraved mind element is not on the defendant's internal state of mind but rather simply on what he or she did.

The second element of this offense requires that the defendant's conduct was of such a character that it evinced a "depraved mind regardless of human life." "Depraved mind regardless of human life" does not mean that the mind of the defendant must have been diseased or that he must have had a mental disorder generally described as insanity or feeblemindedness. *The depravity of mind referred to exists when the conduct endangering the safety of another demonstrates an utter lack of*

*concern for the life and safety of another* and for which conduct there is no justification or excuse. *It is not necessary that there be an intent to endanger the safety of another*, but it is sufficient if the safety of another is endangered by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life. (Emphasis added.)

The above instruction was approved in *State v. Dolan*, 44 Wis. 2d 68, 73, 170 N.W.2d 822, 825 (1969).

Finally, we note that our supreme court recently quoted with approval certain language from *Weso, supra*, which indicates that a depraved mind is evidenced by the defendant's disregard for the possible results of his or her conduct: " 'The excessiveness of the conduct in relation to its purpose, the nature of the conduct *and the disregard for the possible result of such conduct* evinces an unreasonable mind in that it lacked balance, a moral sense, and judgment and hence was depraved.' " *State v. Sarabia*, 118 Wis. 2d 655, 666, 348 N.W.2d 527, 534 (1984) (quoting *Weso*, 60 Wis. 2d at 412, 210 N.W. 2d at 446) (emphasis added). This language is squarely in opposition to Blanco's argument that the state was required to prove that he was conscious of the possible harm resulting from his pyromaniacal acts.

The dissenting opinion asserts that Blanco's mental disease and retardation prevented him from appreciating the wrongfulness of his conduct or conforming his conduct to the dictates of the law. Those factors are relevant to the defense of insanity, a defense which Blanco successfully mounted.

Having rejected Blanco's argument that the state did not prove the depraved mind element of the offense of endangering safety by conduct regardless of life, sec. 941.30, Stats., we uphold the trial court's judgment finding that Blanco's conduct violated the above statute, and we affirm the order of commitment.

*By the Court.*—Judgment and order affirmed.

MOSER, J. *(dissenting)*.   I dissent from the majority opinion. In this case, the trial courts were dealing with a man who had a verbal IQ of 69, a performance IQ of 58 and a full scale IQ of 60. The uncontradicted record shows that he had a mental defect. The following facts were uncontradicted in the record: that Blanco's mental defectiveness was coupled with a schizophrenic mental disease that showed him to be delusional, nonresponsive, and disoriented as to time and place; that these conditions existed at the time the alleged crimes were committed; and that the coexistence of the mental defects and mental disease affected his ability to the degree that he was unable to appreciate the wrongfulness of his conduct or conform this conduct to the dictates of the law at the time of the offenses.

The federal and state supreme courts have held that the state has the burden of proof to prove every element of a charged crime beyond a reasonable doubt.[1] Section 941.30, Stats., provides that: "Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, is guilty of a Class D felony." A depraved mind is defined as "[a]n inherent deficiency of moral sense and rectitude, equivalent to statutory phrase 'depravity of heart' defined as highest grade of malice."[2] Our supreme court has defined the element of "depraved mind" as something more than negligence but something less than specific intent, but more criminally culpable than negligence because of its offensive and shocking nature.[3] In *State v. Weso* the supreme court said that a depraved mind was a self-created condition of the mind and was to be distinguished from insanity or feeble-

---

[1] *In re Winship*, 397 U.S. 358, 364 (1970); *Turner v. State*, 76 Wis. 2d 1, 10, 250 N.W.2d 706, 711 (1977).

[2] Black's Law Dictionary 396–97 (5th ed. 1979).

[3] *Hagenkord v. State*, 100 Wis. 2d 452, 484, 302 N.W.2d 421, 437–38 (1981).

mindedness.[4] A depraved mind must be indifferent to the life of others, recklessness alone is insufficient, and more than a high degree of negligence or recklessness must exist.[5] The court concluded that a depraved mind is not the normal state of mind of a reasonable person. The court said, "A depraved mind lacks a moral sense, an appreciation of life, is unreasonable and lacks judgment. A depraved mind has a general intent to do the acts and the consciousness of the nature of the acts and possible result but lacks the specific intent to do the harm."[6]

The facts in this case are uncontroverted that the appellant set fires in his house of correction cell and that when guards came to his aid he threw urine and feces at them while dancing and shouting the Spanish words for "fire" and "good." In the second instance, he set fires, then danced and babbled to himself that he was "superman." It is uncontroverted that both of the court-appointed psychologists agreed that Blanco suffered from a mental deficiency and mental illness at the time of these incidents. In other words, he was a feeble-minded, insane person at the time he committed these acts. As such, he was not conscious of the nature of his acts and did not act with a depraved mind within the legal meaning of the phrase. The state thus could not prove that element of the crime charged.

Therefore, he should not have been found guilty of the two counts of endangering safety by conduct regardless of life in the first phase of this trifurcated trial. I would reverse the trial court's finding of guilt because Blanco was a feeble-minded madman who set fires in his cell, not a rational human being who exhibited a depraved mind indifferent to injury. The state simply failed to prove the required depraved mind element.

---

[4] 60 Wis. 2d 404, 409, 210 N.W.2d 442, 444 (1973).

[5] *Id.* at 410–11, 210 N.W.2d at 445.

[6] *Id.* at 411–12, 210 N.W.2d at 446.