**UNITED STATES, Appellee,**

v.

**Daniel J. VANDENACK, Private, U.S. Army, Appellant.**

No. 41,569.

CM 439810.

U. S. Court of Military Appeals.

April 18, 1983.

For Appellant: *Captain Guy J. Ferrante* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Major James F. Nagle, Captain Gary D. Gray* (on brief); *Colonel William G. Eckhardt, Major Patrick F. Crow.*

For Appellee: *Captain Paul E. Jordan* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards, Captain Paul K. Cascio* (on brief); *Captain Patrick M. Flachs.*

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried by a military judge sitting as a general court-martial on six charges which arose from his operation of a motor vehicle on December 11, 1979. Pursuant to a pretrial agreement, he pleaded guilty to operating a motor vehicle without a valid operator's license contrary to a USAREUR regulation, reckless driving, murder, and wrongful appropriation of a Volvo automobile, in violation of Articles 92, 111, 118, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 911, 918, and 921, respectively. The remaining charges were dismissed.[1] After entering findings on the pleas of guilty, the military judge sentenced Vandenack to a dishonorable discharge, confinement at hard labor for 9 years and 9 months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. In accordance with the pretrial agreement, the convening authority reduced the period of confinement to 5 years, but in all other respects, he approved the trial results. The United States Army Court of Military Review affirmed in a short-form opinion.

This Court granted review of the issue in which appellant questions "[w]hether ... [his] plea of guilty to vehicular homicide charged as murder (Charge III) by means of running a red light and speeding was provident." Specifically, appellant urges that his conduct leading to the fatal automobile accident in question does not reflect the requisite malice so as to rise to the level

---

1. Appellant had been charged with larceny of the Volvo, but, as part of the plea bargain, the Government offered no evidence to establish that he had stolen—rather than misappropriated—this car.

of murder; that, instead, his plea of guilty to murder was the product of his fear of the sentence to life imprisonment which is authorized as the maximum punishment for that offense; and that, in any event, in light of the equivocal nature of his responses during the providence inquiry, the military judge should have rejected his tendered pleas to murder. On the record before us, we conclude that there is no merit to appellant's claim of error.

I

About midmorning one day, appellant—who had never been issued a valid driver's license anywhere—took a car from a parking lot at Warner Barracks, Bamberg, Germany, without the owner's knowledge or permission. He drove off-post "a ways out" on Berliner Ring and travelled for "an hour or two at most" along a four-lane road—"most of the time" in the proper lane of traffic. Although the speed limit was 70 kilometers (43 miles) per hour, appellant drove at various rates exceeding that speed, with between 100 and 130 kilometers (62 to 81 miles) per hour being the fastest.

At some point in his travels, appellant approached a passenger car which was stopped in his lane at a red traffic signal. Vandenack—who claims he did not see the red light and who, apparently, also did not see that the car was stopped—ran into the left rear portion of that automobile, which was sent spinning around into a truck and came to rest facing in the opposite direction. Partly because he was driving a car which did not belong to him and was doing so without a driver's license, appellant left the scene of this accident and speeded down Berliner Ring at the rate of 100 to 120 kilometers (62 to 74) miles per hour.

While proceeding at this high rate of speed in a northerly direction, appellant ran through at least three more red traffic lights and, at times, drove on the wrong side of the road. As he approached the intersection with Poedeldorfer Strasse, another car was in the middle of that intersection facing west and waiting to turn left into appellant's street to go south. This other automobile was proceeding with a green traffic signal, and appellant faced yet another red light. While Vandenack never stated during the providence inquiry that he actually saw the other car, there was daylight at the time; the weather was good; and the car was sitting in the middle of the intersection while awaiting an opportunity to turn. Appellant *did* say he saw this red light. Nonetheless, he purposely speeded through the intersection and crashed into the side of the other car, so that it skidded about 40 meters (44 yards) and, with fatal results, its driver was hurled through the windshield and skidded several meters along the street.[2] At least five or six other cars were near the same intersection at the time.

The following colloquy occurred at trial during the course of the inquiry into appellant's proffered plea of guilty to murder based on this incident:

MJ: Okay. You know, even though you've never been a licensed driver, you know what a red light's for, don't you?

ACC: Yes, sir, I do.

MJ: And when you drive through a red light on purpose, at a high rate of speed, do you feel in [sic] act in a way that's inherently dangerous to the lives of more than one person, particularly if there's several people around?

ACC: Yes, sir.

MJ: Do you?

ACC: Yes, sir.

MJ: Is that what you did?

ACC: Yes, sir, that's what I did.

MJ: And you told me you did that on purpose, right?

ACC: Yes, sir.

---

2. The driver—a 25-year-old schoolteacher—suffered central respiratory paralysis, shock due to hemorrhage from a fracture at the base of her skull, fracture of her cervical column, serial fractures of the ribs on the left side, fractured ribs on the right side, sternum fracture, and fracture of her pelvic girdle; and her brain exited her skull. She was pronounced dead at the scene.

232

MJ: Did it occur to you that somebody could get killed?

ACC: Not at the time, sir.

MJ: You agree that it should have been obvious to you that somebody could get killed when you did that?

ACC: After I thought about it, yes, sir.

MJ: Do you believe that your actions demonstrated a complete and utter disregard of the possibility, the very likely possibility that when you went speeding through that red light contrary to the direction of control that somebody might be killed?

ACC: It's a possibility, sir.

MJ: Well, is it more than that? Do you believe that that was the probable consequence?

ACC: Excuse me, sir.

MJ: Do you believe that was a probable consequence, and that you disregarded it?

ACC: Yes, sir.

MJ: Now, did somebody get killed?

ACC: Yes, sir.

MJ: And, who was that?

ACC: Waltraud Linter, sir.

MJ: Okay. Now you didn't know her, did you?

ACC: No, I didn't, sir.

MJ: But, are you convinced from the investigation, and the evidence you've seen that in fact she was killed as a result of your actions?

ACC: Yes, sir.

MJ: Is there any doubt about that in your mind?

ACC: No, sir.

*    *    *    *    *    *

MJ: Now once again, do you believe . . ., you told me this once before, but I want to be absolutely certain. Do you believe and admit to me at this time that the actions you've described, and the manner of driving, we've just been [sic] discussed that you engaged in, were inherently dangerous to other

persons, and demonstrated a wanton disregard for human life?

ACC: Yes, sir.

MJ: Is there any doubt about that in your mind?

ACC: No, sir.

## II

Murder at common law—and by statute in many jurisdictions—"is an unlawful homicide with malice aforethought."[3] 2 *Wharton's Criminal Law* § 137 (C. Torcia 14th ed. 1979); *Model Penal Code* § 210.2, Comment at 13–14 (Final Draft 1962). *See* F. Wharton, *The Law of Homicide* § 2 (F. Bowlby 3rd ed. 1907). Malice need not include an intent to kill. An intent to do great bodily harm will suffice. *Wharton's Criminal Law, supra; The Law of Homicide, supra,* § 139. Indeed, malice actually is a symbolic term

denoting various mental states, such as: (1) intent to kill; . . . (3) intent to do an act knowing that it will probably cause death or great bodily harm; (4) intent to commit an act imminently dangerous to others and evincing a depraved and malignant heart regardless of human life and fatally bent on mischief; (5) intent to commit a felony; and (6) intent to use force upon a law enforcement officer to avoid arrest or to facilitate escape from custody.

*Wharton's Criminal Law, supra. See Model Penal Code, supra* at 14–15. *See also* 2 E. Devitt and C. Blackmar, *Federal Jury Practice and Instructions* § 41.05 (3rd ed. 1977). Whether the requisite malice was present at the time of a killing often must be inferred from evidence about the circumstances surrounding the incident. *See The Law of Homicide, supra* at § 150; Devitt and Blackmar, *supra.*

In the military justice system, murder is proscribed by Article 118, UCMJ, 10 U.S.C. § 918. This provision embraces unlawful homicide "without justification or excuse"

3. Actually, "malice need exist only at the time the homicid[e] . . . is committed." Thus, "the term 'aforethought' has come to be superflu-ous." 2 *Wharton's Criminal Law* § 137 (C. Torcia 14th ed. 1979); *see* R. Perkins, *Criminal Law* 34–35 (2d ed. 1969).

done either (1) with "a premeditated design to kill"; (2) with intent "to kill or inflict great bodily harm"; (3) while "engaged in an act which is inherently dangerous to others and evinces a wanton disregard of human life"; or (4) while "engaged in the perpetration or attempted perpetration of burglary, sodomy, rape, robbery, or aggravated arson." [4]

In prosecuting Vandenack, the Government relied on the third alternative. Specifically, appellant was accused and convicted of "murder[ing] Waltraud Lintner by means of running into her automobile with an automobile" "while engaged in acts inherently dangerous to others, evincing a wanton disregard of human life, to wit: running a red light and speeding." (Specification of Charge III.) Appellant now urges that his conduct, instead of displaying such malice as alleged, only reflects culpable negligence warranting conviction for manslaughter. See Article 119(b)(1), UCMJ, 10 U.S.C. § 919(b)(1). Noting that at one point in the providence inquiry he equivocated as to whether he actually knew at the time of his actions "that somebody could get killed," appellant argues that he never conclusively acknowledged the malice requisite for guilt of murder, and that it was not demonstrated by the facts which he admitted at trial.

In so arguing, appellant manifests a misconception about the nature of the necessary malice. As it is stated in paragraph 197d of the Manual for Courts-Martial, United States, 1969 (Revised edition):

Engaging in an act inherently dangerous to others, without any intent to cause the death of, or great bodily harm to, any particular person, or even with a wish that death may not be caused, may also constitute murder if the performance of the act shows a wanton disregard of human life. Such a disregard is characterized by a heedlessness of the probable consequences of the act or omission, an indifference that death or great bodily harm is likely to ensue.

Accord Model Penal Code, supra at 15; R. Perkins, Criminal Law 36–37 (2d ed. 1969). Indeed, as Professor Wharton put it:

While malice is an essential element in the crime of murder, either at common law or under these statutes [providing that murder includes the unlawful killing of another when perpetrated by an act imminently dangerous to others, evincing a depraved mind regardless of human life], it is not necessarily confined to an intention to take the life of the person killed, but includes an intent to do any unlawful act which may probably deprive a person of life, malice being implied from such act. The qualities of acts imminently dangerous and evincing a depraved mind regardless of human life, within the meaning of such provisions, are to be found in the acts themselves and the circumstances of their commission.

The Law of Homicide, supra, § 129 (footnote omitted).

Prior to appellant's recounting of the events leading up to the fatal crash, the military judge advised appellant that "recklessness" included "a culpable, wanton, gross, or deliberate disregard for the foreseeable consequences of ... [his] act." See generally R. Perkins, supra at 37. While appellant did say at one point during his providence inquiry that he did not actually realize at the time of his actions that his conduct could lead to someone's death, he did acknowledge that he should have known this, in view of the nature of his actions. Further, while at another point he said that there was a possibility that someone could be killed by such actions, he subsequently admitted that death actually was a probable consequence of his conduct. Finally, appellant affirmatively responded when the military judge asked him whether he thought that running a red light at a high rate of speed under the circumstances of this case was an act "inherently dangerous" to the

4. As in a number of state jurisdictions, this statute does not employ the phrase "malice aforethought," but the statutory language does

generally parallel the traditional meaning of that term. See Model Penal Code § 210.2, Comment at 17 (Final Draft 1962).

**234**

lives of others "and demonstrated a wanton disregard for human life."

We entirely agree with Vandenack's conclusions in this regard. While appellant in this Court implies that almost never can a person be convicted of murder—as opposed to involuntary manslaughter—where violation of mere traffic laws leads to the fatal accident, his suggestion is ill-founded.[5] The courts which have addressed the question are generally in agreement "that the malice requisite to a murder conviction may be implied in vehicular homicide cases from such circumstances as extraordinarily wild driving, aggravated violation of traffic safety regulations, and similar conduct." 21 A.L.R.3d 116, 126 (footnote omitted) (Annot: Homicide by Automobile as Murder). The common feature of vehicular murder cases is "some form of exceptionally reckless driving, of so dangerous a nature that the possibility of a fatal collision would suggest itself to any reasonable observer." *Id.* at 122.

By this benchmark, we are satisfied that appellant appropriately pleaded guilty to— and the military judge correctly found him guilty of—murder. Surely, when a person who never has possessed a valid driver's license takes someone's car without his permission; drives it on city streets at a high rate of speed; runs several red traffic lights and in the process hits a car; and, in panic because he has no license and the vehicle driven is not his, flees the scene of the accident; speeds up and again goes through several red lights; and—despite yet another red traffic signal barring his car and despite a clearly visible automobile sitting directly in the path of his on-charging vehicle—barrels into that car, it hardly can be claimed that this person is not "engaged in an act which is inherently dangerous to others and evinces a wanton disregard of human life."[6] *See* Art. 118(3) of the Code. While most traffic cases resulting in death may not involve circumstances sufficient to support a finding of such malice, this case certainly does.[7]

## III

Accordingly, the decision of the United States Army Court of Military Review is affirmed.

Judges COOK and FLETCHER concur.

---

5. Although malice may be difficult to prove in a traffic case, at least one court has found such malice implicit in a willful and wanton violation of a statute intended to protect the travelling public from conduct when death is the natural and probable consequence of such conduct. *See Geter v. State,* 219 Ga. 125, 132 S.E.2d 30 (Ga.1963). Moreover, the editor of *Wharton's Criminal Law, supra,* § 143, includes a reference to one instance where operating a vehicle at a high rate of speed was found to be "an act imminently dangerous to others and evincing a depraved and malignant heart." *See Montgomery v. State,* 178 Wis. 461, 190 N.W. 105. The difficulty for the Government in proving vehicular murder was not so great in the present case that defense counsel could be faulted in any way for not advising appellant to reject the pretrial agreement.

6. Whether recklessness in a given case is so extreme that it demonstrates an indifference to the value of human life similar to that manifest in a purposeful or knowing homicide is a question best left to the triers of fact under appropriate instructions. *See Model Penal Code, supra* at 22; at 24 n. 50 there is an example, readily analogous to the circumstances of this case, distinguishing between murder and culpable homicide (*see* Article 119(b)(1), Uniform Code of Military Justice, 10 U.S.C. § 919(b)(1), manslaughter by culpable negligence). The evidence that appellant had misappropriated the car and possessed no operator's license—while not essential to the Government's murder case—tended to prove that, because of his desire to avoid apprehension and punishment, Vandenack drove at a high speed with complete disregard for the danger he created for others.

7. Appellate defense counsel suggests that the real motive for appellant's plea was fear of a possible life sentence flowing from a murder conviction, rather than satisfaction that he possessed the requisite malice to be guilty of murder. Doubtless appellant was apprehensive about such a possible sentence upon conviction absent a sentence-limitation provision of a pretrial agreement. However, unless the murder charge was groundless, he is in the same predicament as all accused persons who seek to limit their liability on charges against them.