STATE of Wisconsin, Plaintiff-Respondent,

v.

Ricky B. SALTER, Defendant-Appellant.†

Court of Appeals

*No. 83–305–CR. Submitted on briefs December 20, 1983.— Decided February 8, 1984.*
(Also reported in 346 N.W.2d 318.)

---

† Petition to review denied.

68

For the defendant-appellant, the cause was submitted on the brief of *John E. Tradewell*, assistant state public defender.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.    Ricky B. Salter appeals from a judgment of conviction of first-degree murder, contrary to sec. 940.01, Stats., and from an order denying his motions for post-conviction relief.  The issues concern the exclusion of the testimony of Dr. Frederick Fosdal, a psychiatrist, and the failure of the trial court to take a personal waiver from Salter when his counsel declined an instruction of a lesser included offense of man-slaughter.  We conclude that the exclusion of Dr. Fosdal's testimony was proper and that the record does not support the trial court's offer of a lesser included offense of manslaughter.  We further deny the request for a new trial in the interests of justice and affirm the conviction.

Salter was originally charged with attempted first-degree murder, contrary to secs. 939.32 and 940.01, Stats., arising out of the shooting of Patricia Wilson. Thereafter, Patricia died of her wounds, and the State issued the information charging Salter with first-degree murder.

The facts relating to events prior to the shooting are not in significant dispute.  Salter and Patricia had lived together for six years.  They had a four-year-old son, and Patricia was pregnant with Salter's child.  On the evening of January 23, 1981, a group of people, including Salter and Patricia, attended a party at the home of Robert Rodriguez.  At the party, Patricia became aware that Ann Florez, a guest at the party, had been flirting with Salter.  According to Salter's testimony, Patricia expressed her displeasure with this flirting incident and urged Ann's boyfriend to speak with Ann because Patricia did not want to "have to straighten her out."

About 3:00 a.m., the group ran out of beer and traveled to an ice skating arena where they planned to obtain more refreshments. Unable to obtain access to this facility, the group returned to the Rodriguez home. Most of the group went inside, but Salter, Patricia, and Jean Champion remained outside. Salter and Patricia began to argue about whether to stay at the party or go home. Salter wanted to leave, and Patricia wanted to stay long enough to go inside and settle her dispute with Ann Florez. It was at this time that the shooting occurred.

The events surrounding the shooting itself are in sharp dispute. Jean Champion, the State's principal witness, testified that Salter kept trying to get Patricia to go home with him but that Patricia wanted to go inside to fight with Ann Florez. As Patricia walked toward the steps leading to the house in order to "take care of Ann," Salter struck Patricia in the face. She fell to the ground with her head hitting the steps, apparently knocking her out. Champion grabbed Salter's arm and told him to leave Patricia alone. Salter pushed Champion away and Champion went to the assistance of Patricia. While kneeling next to Patricia, Champion heard one or two sounds like a cap gun and saw two simultaneous white flashes. She looked at Salter, who was standing about three feet away, and saw his arm pointing toward Patricia's head. Champion testified that the flashes had come from near Salter's outstretched arm. In reply to Champion's remark that she thought Salter had hurt Patricia, Salter replied, "I shot her and killed her."

Salter testified that upon return to the Rodriguez home from the ice arena, Patricia said she was going to "take care of Ann" and "kick this bitch in the ass." As Patricia started up the stairs, Salter reached over and put his hand on top of her head and pushed her downward, forcing her to sit on the steps. Salter then decided to leave

without Patricia. He reached into his left back pocket to find a house key to give to Patricia. He had a hand gun in that pocket, removed it with his left hand and placed it in his right hand. His right foot was on the step, and his left foot was on the ground. Salter testified that Champion, upon seeing the gun, grabbed at his right shoulder and near his right wrist. He turned to face her, and as he did so, his right hand hit the railing of the front porch, and the gun went off, striking Patricia. Salter testified that he did not intend to kill Patricia and that the shooting was accidental.

Patricia was questioned at the Kenosha Memorial Hospital emergency room. She stated that she had been sitting in a station wagon with Salter, that they had gotten into an argument and that Salter had slapped her. She said Salter had a gun, but she did not remember being shot. She subsequently died of her wounds.

About 6:00 a.m. on January 24, 1981, Salter was arrested by officers of the Kenosha Police Department. At the police station, Salter was questioned by Kenosha Detective Michael Serpe. Salter stated the gun went off when Jean Champion struck him on the right side. A formal written statement was subsequently obtained from Salter.

Monte Lutz, a firearms and tool mark examiner with the State Regional Crime Laboratory, testified that the weapon could be discharged without the trigger being pulled or the hammer being cocked and that usual safety devices were not incorporated into the mechanism of the weapon.

## PSYCHIATRIC TESTIMONY OF DR. FOSDAL

At trial, the defense offered the testimony of Dr. Frederick Fosdal, a psychiatrist, on the matters of intent, absence of motive, mental state or condition of the de-

fendant, credibility, and lesser included offenses. This evidence was excluded by the trial court, citing *Steele v. State*, 97 Wis. 2d 72, 294 N.W.2d 2 (1980), and on the grounds that the proffered testimony invaded the province of the jury. Defense counsel then made an offer of proof in the form of a statement as to Dr. Fosdal's anticipated testimony and further argued that the testimony represented a prior consistent statement by Salter.

### Credibility

Salter contends that Dr. Fosdal's testimony is admissible under sec. 906.08, Stats. The statute provides, in part, as follows:

Evidence of character and conduct of witness. (1) OPINION AND REPUTATION EVIDENCE OF CHARACTER. Except as provided in § 972.11(2), the credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion, but subject to these limitations: a) the evidence may refer only to character for truthfulness or untruthfulness, and b), except with respect to an accused who testifies in his or her own behalf, evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

While the statute clearly allows for the giving of opinion and reputation evidence as to character for truthfulness or untruthfulness, nothing in the offer of proof satisfies us that Dr. Fosdal was prepared to give such opinion or reputation evidence on these matters. The doctor merely recited in his report that Salter "talked freely about his past and present life and the information he volunteered seemed to be generally reliable." There is no indication in Dr. Fosdal's report that the purpose of the examination was to assess the truthfulness of Salter's statements. Rather, Dr. Fosdal performed an examination of Salter pursuant to court order under sec. 971.16

(1), Stats. Dr. Fosdal's observation that the information volunteered by Salter "seemed to be generally reliable" relates to the likely accuracy of Salter's recounting of his personal history rather than an attestation as to Salter's truthfulness regarding the events of the shooting. It is important to note that Dr. Fosdal, in his concluding remarks to the trial court in his report, observed "[q]uite clearly, two issues in this case are the credibility of Mr. Salter's account of what happened and knowing exactly what happened." In this context, Dr. Fosdal ventured no opinion.

There is no question but that defense counsel alerted the judge to the fact that the proffered testimony would bear upon Salter's credibility. However, considering the subtle but important evidentiary distinctions drawn between opinion and reputation testimony as to truthfulness (particularly as to requisite foundation), we are not satisfied that the offer of proof in this case stated "an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt." *Milenkovic v. State*, 86 Wis. 2d 272, 284, 272 N.W.2d 320, 326 (Ct. App. 1978). The offer of proof must enable the reviewing court to act with reasonable confidence that the evidentiary hypothesis can be sustained. *Id.* The offer of proof and the evidentiary arguments did not address these distinctions nor did they demonstrate how the applicable foundation requirements were satisfied.

Salter contends that the trial court was obligated to admit Dr. Fosdal's testimony pursuant to *State v. Cuyler*, 110 Wis. 2d 133, 327 N.W.2d 662 (1983). We fully accept the rule of *Cuyler* that the rules of evidence now allow a witness to give opinion testimony concerning the defendant's character for truthfulness. However, *Cuyler* also holds that such evidence is not automatically admis-

sible. The trial court may exclude the evidence if the witness lacks personal knowledge. *Id.* at 139, 327 N.W.2d at 666; *see also United States v. Watson,* 669 F.2d 1374, 1382 (11th Cir. 1982). Nothing in sec. 906.08, Stats., and *Cuyler* eliminates the duty of the trial court to satisfy itself that minimal levels of competency are met before receiving reputation and/or opinion evidence of character as to truthfulness. *See* secs. 906.01 and 906.02. We do not read *Cuyler* to automatically mandate the receipt of opinion evidence as to truthfulness simply because the witness offering the opinion has had personal contact with the person about whom the opinion is offered.

We do not hold for all purposes that a psychiatrist may not give an opinion as to a witness' character for truthfulness. We hold only that where the psychiatrist has had but one interview with the witness, has reviewed pertinent historical data, has conducted his examination pursuant to court order for the purposes of determining the defendant's mental state at the time of the commission of the alleged offense, and where it is uncertain from the offer of proof that the psychiatrist, in fact, harbors an opinion as to truthfulness, it is within the discretion of the trial court to admit or exclude the evidence. We find no abuse of discretion in the rejection of such testimony in this case.

### Intent and Motive

Salter contends that the testimony of Dr. Fosdal was relevant and probative on the claims of lack of intent to kill and motive. Here again, we are not satisfied from an examination of the offer of proof and the report of Dr. Fosdal that the proffered testimony addressed these concepts.

Nonetheless, *State v. Dalton,* 98 Wis. 2d 725, 728–32, 298 N.W.2d 398, 399–401 (Ct. App. 1980), clearly states that such testimony is not relevant or probative on the question of intent. While *Dalton* did not involve a consideration of psychiatric testimony on the issue of claimed lack of motive, we conclude that the logic and rationale of *Dalton* applies to considerations of motive as well as intent. *Dalton* held in part:

We agree with the trial court's determination that the offered testimony from the psychiatric witness was not "scientific technical or other specialized knowledge" which would "assist the trier of fact to understand the evidence or to determine a fact in issue" and thus was properly excludable pursuant to sec. 907.02, Stats. The psychiatrist's qualifications as an expert were conceded; however, that does not end the inquiry with respect to whether an expert should be permitted to give evidence to the fact trier, sec. 907.02, and whether to permit the exercise of an expert's prerogative to address the fact trier in the form of opinion or inference. Sec. 907.04.

*Id.* at 730–31, 298 N.W.2d at 400. To hold otherwise would transform the psychiatrist from a medical expert to a legal expert and would allow, in the final analysis, such a witness to testify as to how a case should be decided. This is clearly forbidden. *See Roe v. State,* 95 Wis. 2d 226, 248, 290 N.W.2d 291, 302–03 (1980).

## Lesser Included Offenses

Salter contends that the rejection of Dr. Fosdal's testimony was also improper because it was relevant to possible lesser included offenses that might be submitted to the jury. The very fact that Salter must allude to lesser included offenses as "possible" answers this argument. Evidentiary rulings by a trial court are not governed by the "possibility" that the evidence might bear upon lesser included offenses. Rather, they are to be

premised upon a proper application of the evidentiary code to the charged offense, the defenses asserted, and the proffered evidence. Were the rule otherwise, any evidence remotely probative of possible lesser included offenses would be admissible. Trials would become forums for the litigation of extraneous and irrelevant issues rather than the charged offense and defenses asserted.

We conclude it was not error for the trial court to reject Dr. Fosdal's testimony upon the claim that it might bear upon offenses which could ultimately go to the jury in the form of lesser included offenses.

### Prior Consistent Statement

Salter further contends that Dr. Fosdal's testimony was admissible as a prior consistent statement pursuant to sec. 908.01(4), Stats., which provides, in part, as follows:

STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:
(a) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:

. . . .
2. Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . .

It is important here to note the sequence and chronology of the events at trial relative to the proffered testimony of Dr. Fosdal.

As the State's case was drawing to a close, an exchange took place between the court and counsel where the defense attorney indicated that Dr. Fosdal might be a witness for the defense. When the court inquired as to the purpose of calling Dr. Fosdal, defense counsel replied,

"With respect to state of mind, chiefly." The court replied that it was not inclined to receive the testimony but wished to review the *Steele* decision during the evening and that it would review the entire matter the following morning. Defense counsel then indicated that the testimony:

[w]ould be probative of the question of intent in this case which is central to the case, probative to the absence of motive, probative as to the mental state or condition of the defendant, probative and complimentary [sic] to the anticipated testimony of the defendant, thereby his credibility, and also would speak to any requests for lesser included degrees of homicide by either the State of [sic] the defense.

Defense counsel never asserted while making his evidentiary arguments in support of the admissibility of Dr. Fosdal's testimony that the evidence was being offered as a prior consistent statement under sec. 908.01(4)(a), Stats.

Upon reconvening, the court placed upon the record its ruling that Dr. Fosdal's testimony would not be admitted. This ruling addressed considerations of *Steele*, intent to kill, capacity to form intent, absence of motive, lesser included offenses, and existing mental state of the defendant at the time of the offense. The court confirmed its tentative ruling of the previous day and rejected the testimony under *Steele, Curl v. State*, 40 Wis. 2d 474, 162 N.W.2d 77 (1968), *cert. denied*, 394 U.S. 1004 (1969), and the belief that the testimony would invade the province of the jury.

In a lengthy statement, defense counsel then made his offer of proof. Intermeshed with this statement were renewed evidentiary arguments previously asserted in support of the admissibility of Dr. Fosdal's testimony. Midway through this offer of proof, and for the first time

during this entire debate, defense counsel raised the specter of the admissibility of this testimony on the basis of a prior consistent statement. Such an isolated reference contained in an offer of proof, not asserted as grounds for admissibility when the evidentiary arguments were made and following the ruling of the court, does not satisfy the requirements for fairly addressing the evidentiary hypothesis upon which the evidence is offered. *Milenkovic,* 86 Wis. 2d at 284, 272 N.W.2d at 326. If these grounds for admissibility had been asserted when the evidentiary arguments were made, the trial court could have addressed them in its ruling. Having failed to do this in his evidentiary argument, defense counsel should have made this argument with some prominence in his offer of proof to alert the court that a new ground for admissibility was asserted and that the previous ruling should be reconsidered.

Moreover, the statutory prerequisites for receipt of the prior consistent statement had not been met when the testimony was offered. Salter had not yet testified and, therefore, had not been cross-examined. Sec. 908.01(4)(a), Stats. There was no basis upon which the trial court could intelligently rule as to whether Dr. Fosdal's proffered testimony would be consistent with that of Salter's. Nor could the court rule as to whether it would serve to "rebut an express or implied charge against him of recent fabrication or improper influence or motive" within the meaning of the statute.

Salter contends, however, that the trial court was duty-bound to deceive Dr. Fosdal's testimony under the provisions of sec. 901.04(2), Stats., which provides as follows:

RELEVANCY CONDITIONED ON FACT. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it *upon, or subject to, the introduction of evidence* sufficient to support a finding of the fulfillment of the condition. [Emphasis added.]

We have substantial reservations whether the crucial decision to put a defendant on the stand constitutes the "fulfillment of a condition of fact" within the meaning of the statute. Nonetheless, the statute still accords the trial court discretion *when* to admit the testimony—(1) when the evidence is offered *subject to* the introduction of the fulfillment of the condition, or (2) *upon* the introduction of the evidence sufficient to fulfill the condition. Although the trial court did not address the admissibility of Dr. Fosdal's testimony under this statute (nor was he requested to do so by the defense), it is clear that the evidence was not entitled *to automatic admissibility at the time it was offered.* Because it was not reoffered once Salter had testified and was cross-examined, we conclude Salter has waived his right to claim admissibility under this statute.

Finally, our examination of the record reveals that Detective Michael Serpe gave testimony concerning a prior consistent statement by Salter which placed before the jury Salter's version of an accidental/unintentional shooting. Detective Serpe took a statement from Salter following the arrest on January 24, 1981. Detective Serpe first summarized Salter's oral statement:

[a]nd then he said he pulled a gun out of his left rear pocket with his left hand and he said that Jeannie came at him from his right and the gun went off, and that's basically a brief form of what that statement is.

Following this testimony, Detective Serpe was permitted to read Salter's statement *in toto* to the jury. The crucial portion is as follows:

In the left rear pocket of my pants I had a .22 caliber gun. I pulled the gun [out] of my pocket with my left hand. I had the gun in my left hand and I stepped forward toward them and Fish [Patricia Wilson] stood up and Jeannie came at me and hit me from my right side.

The next thing that I remember was that the gun went off.

While Salter's statements to Detective Serpe and Dr. Fosdal varied as to detail, Salter's theory of the case—accidental shooting—was nonetheless clearly conveyed to the jury via Serpe's testimony. Further, it was corroborated by Salter's own testimony and, in part, by certain testimony of Monte Lutz, a firearms expert.

Salter's argument that the jury was left with the unrefuted impression that the defendant had "staged" his testimony after having heard the State's case is rebutted by Salter's own version of accidental shooting and supported by his prior consistent statement to Serpe. If the rejection of Dr. Fosdal's testimony was truly error, we conclude in light of the testimony of Serpe, Salter and Lutz that such error was harmless beyond a reasonable doubt. We conclude that the probable impact of Dr. Fosdal's testimony on the minds of an average jury would have been minimal or nonexistent in the light of this record.[1] *Alicea v. Gagnon,* 675 F2d 913, 925 (7th Cir 1982), citing *Chapman v. California,* 386 U.S. 18, *reh'g denied,* 386 U.S. 987 (1967).

## MANSLAUGHTER AS A LESSER INCLUDED OFFENSE

Salter argues that the declination of the trial court's offer to submit the lesser included offense of manslaughter required a personal waiver by the defendant. Because we conclude that the facts of this case do not allow for the submission of a manslaughter charge, we

---

[1] We conclude that evidence of a defendant's prior consistent statement received through the testimony of a police officer as a State's witness is likely to be more helpful to a defendant's case than if offered through a psychiatrist produced by the defense.

find no error in failing to personally address Salter on this question.

The record reveals that the court and counsel apparently conducted an informal instructions conference. Thereafter, in an abbreviated statement on the record,[2] the following exchange took place:

THE COURT: State versus Salter. In chambers. Instructions conference. Appearances are the same, including the defendant. The court notes that defendant has requested 940.01 and 940.09 be submitted. The State objects to 940.09 and *cites State versus Jones,* in 70 Wis. 2d, but the court having carefully considered the record and especially the testimony of Dr. Wagner feels that it would be an inappropriate exercise of discretion to refuse the request to give 940.09. Therefore, it will be given, but to include at the second element the paragraph from Standard Criminal instruction No. 230 as follows: The law provides that the presence of one-tenth of one percent or more by weight of alcohol in a person's blood when coupled with corroborating physical evidence is a sufficient basis for finding that a person was under the influence of an intoxicant.

*The record will also show that the court specifically offered to give 940.54, manslaughter but that that refused to be accepted by the defense.*[3] [Emphasis added.]

MR. LANDA: Well, could the record also indicate that the State opposed that instruction.

THE COURT: Yes, the record will also so [sic] that.

MR. LANDA: Thank you.

---

[2] While the trial court properly placed on the record a summary of the informal instructions conference, greater detail as to the reasons for the giving of certain instructions and the rejection of others is preferred. This would be particularly helpful where, as here, it is contended that a particular instruction might have been appropriate. The record does not reflect the reasons why the trial court may have considered the manslaughter instruction proper, nor does it reflect the reasons why the State and defense either opposed or declined the instruction.

[3] The trial court mistakenly referred to the manslaughter statute as sec. 940.54, Stats.

■

The question of whether a lesser included offense is warranted is a question of law. *State v. Williford,* 103 Wis. 2d 98, 112, 307 N.W.2d 277, 283 (1981). This court is not bound by the trial court's determination of a question of law. *State v. Drogsvold,* 104 Wis. 2d 247, 256, 311 N.W.2d 243, 247 (Ct. App. 1981).

■

Our examination of the record reveals no evidence which suggests a reasonable ground for acquittal on the greater offense and conviction on the lesser necessary for submission of a lesser included offense. *Briggs v. State,* 76 Wis. 2d 313, 333, 251 N.W.2d 12, 21 (1977). The only evidence suggestive of provocation under sec. 940.05(1), Stats., was that Patricia refused to go home with Salter and instead wanted to go into the residence to "settle things" with Ann Florez. Nothing in the record relative to the circumstances surrounding the offense and Salter's explanation of the shooting remotely approach levels of "heat of passion" and "adequate provocation" required by the law. Our supreme court has held in *State v. Lee,* 108 Wis. 2d 1, 12, 321 N.W.2d 108, 113 (1982):

To be legally adequate, the heat of passion resulting from this provocation must satisfy both an objective and a subjective test. In *State v. Williford, supra,* 103 Wis. 2d at 113, we wrote: "The heat of passion element of this offense must be the result of adequate provocation and the defendant's state of mind at the time of the commission of the homicide; thus, heat of passion has both an objective (provocation) and a subjective (state of mind) facet." In other words, the provocation must be such that would cause an ordinary, reasonable person to be overcome with emotion to the degree discussed in the *Johnson* line of cases. Furthermore, this provocation must have actually caused such a reaction in the particular defendant.

In the present case, Salter failed to introduce sufficient evidence to raise the heat of passion and provocation issues. We disagree with the implied finding of the trial court that the facts were appropriate for the submission of a lesser included offense of manslaughter.[4]

Salter's version of the shooting was one of accident. This version was testified to by Salter and Detective Serpe and corroborated, in part, by Mr. Lutz. In the face of this testimony, and without sufficient other evidence allowing for any reasonable basis supporting a manslaughter theory, Salter was not entitled to a lesser included manslaughter instruction. In *Thomas v. State,* 53 Wis. 2d 483, 192 N.W.2d 864 (1972), error was claimed in the trial court's refusal to give self-defense and defense of others instructions, where the defendant's version of the shooting was accidental. The supreme court stated in *Thomas:*

Outside of a claim he did not know Chiaverotti was a policeman and thought this was another incident of Pat Bardwell being attacked by a "customer," Thomas' own testimony does not sustain self- or third-party defense. He stated he cocked the gun and it went off "someway." He stated repeatedly he did not try to kill Chiaverotti and did not fire intentionally. One exercising the privilege of self-defense intends to use force or to threaten force against another for the purpose of self-defense. Thomas' testimony, rather than sustaining his self-defense argument, *sounds more like a defense of an unintentional or accidental shooting.* [Emphasis added.]

*Id.* at 488, 192 N.W.2d at 867.

Absent other sufficient evidence allowing for a reasonable basis supporting a manslaughter theory, Salter was

[4] We assume the trial court was referring to sec. 940.05(1), Stats., in offering the manslaughter instruction. However, our remarks as to the insufficiency of the evidence to support the instruction extend to all types of manslaughter contemplated under sec. 940.05.

not entitled to such an instruction in the face of his accidental/unintentional shooting theory of the case. Therefore, the failure of the trial court to personally address Salter on his attorney's declination of the proffered manslaughter instruction need not be answered.

## INTERESTS OF JUSTICE

Because we are satisfied that the real controversy has been fully and fairly tried, that the trial court properly excluded the testimony of Dr. Fosdal and that the jury had before it the *relevant* and *admissible* evidence on the critical issue of credibility, we deny Salter's request for a new trial in the interests of justice. *Cuyler,* 110 Wis. 2d 133, 141–43, 327 N.W.2d 662, 667–68 (1983).

*By the Court.*—Judgment and order affirmed.