STATE of Wisconsin, Plaintiff-Respondent, †

v.

Paul CARRINGTON, Defendant-Appellant.

Court of Appeals

*No. 85–1378–CR. Submitted on briefs January 3, 1986.—
Decided March 11, 1986.*

(Also reported in 386 N.W.2d 512.)

†Petition to review granted.

213

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Stephen W. Kleinmaier,* assistant attorney general of counsel, of Madison.

For the defendant-appellant the cause was submitted on the briefs of *Elizabeth E. Stephens,* assistant state public defender, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J.    After a jury trial, Paul Carrington appeals from a judgment of conviction of two counts of endangering safety by conduct regardless of life while armed, contrary to secs. 941.30 and 939.63(1)(a)3., Stats. Carrington claims that the trial court violated his due process rights when it refused to submit a jury instruction on a lesser included offense and that the evidence was insufficient to support his conviction. We hold that although there was sufficient evidence to sustain Carrington's conviction, the trial court erred in not submitting the lesser included offense instruction of endangering safety by reckless conduct in the use of a dangerous weapon, contrary to sec. 941.20(1)(a), Stats. We therefore reverse and remand this cause for a new trial.

The following facts are not disputed. Carrington went to a tavern one summer night and ordered a beer. Apparently as a joke, the bartender spiked Carrington's first beer with rum and then proceeded to pour another beer down the drain. Carrington was not amused. He asked that his beer be replaced. When his request was denied, he sought to help himself by going

behind the bar. The bartender was equally unamused and got out his pistol to prevent this action. Incensed, Carrington left the premises and returned shortly with a sawed-off shotgun. He displayed the gun to the bartender and demanded a beer. The bartender complied.

Meanwhile, two nearby police officers, Quezaire and Jenkins, had been alerted. Looking through a window the officers observed Carrington holding a shotgun in an upright position while talking to the bartender. Both officers were dressed in casual civilian clothes. After requesting backup help, the officers proceeded to the front entrance of the tavern to keep Carrington under surveillance. Officer Quezaire observed Carrington leave by a rear exit and proceed down the sidewalk away from the two officers. Carrington, a military veteran, was carrying the shotgun in a "port arms" position, i.e., perpendicular across the front of his body with the barrel pointing up at a forty-five degree angle.

From this point on there is a marked difference of opinion as to what exactly transpired. Quezaire claimed that he twice called to Carrington: "Stop, police" before Carrington halted. Both Quezaire and Jenkins testified that Carrington stopped, turned, leveled his weapon in a horizontal position and pointed it in their direction. When Quezaire saw Carrington level the gun in his direction, he quickly fired one shot, but it hit a garbage dumpster that was midway between the two. Carrington then fired his gun and Quezaire returned four more rounds.

Carrington, on the other hand, asserts that while he was proceeding away from the tavern he heard one call of "Halt, police," followed by four shots. Looking over his shoulder he saw a large person doing the shooting. Carrington claims that he did not aim his gun at

anyone, that he thought someone coming out of the bar was firing at him, and that all he did was fire one shot in the air and duck into an alley.

Carrington was approximately seventy-one feet from the officers when the shooting took place. Although the weapon Carrington carried was a sawed-off shotgun, the shot actually fired was of a type used primarily in deer hunting. This pellet was not recovered. Carrington's shotgun, when using such a rifled shell, has a horizontal range up to 200 yards, but its range is greater when fired vertically.

Carrington was charged with two felony counts of endangering safety by conduct regardless of life while armed.[1] Section 941.30, Stats.[2] At trial, Carrington requested that the court instruct the jury on the misdemeanor offense of endangering safety by reckless conduct in the operation of a dangerous weapon. Section 941.20(1)(a), Stats.[3] The trial court refused, holding

---

[1] Carrington was also charged with possession of a short-barreled shotgun in violation of sec. 941.28(1)(c) and (3), Stats. Prior to trial, he agreed to plead guilty on this charge and does not contest it on this appeal.

[2] Section 941.30, Stats., provides:

Endangering safety by conduct regardless of life. Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, is guilty of a Class D felony.

[3] Section 941.20, Stats., provides in part:

Reckless use of weapons. (1) Whoever does any of the following is guilty of a Class A misdemeanor:

    (a) Endangers another's safety by reckless conduct in the operation or handling of a firearm, airgun, knife or bow and arrow.

    . . .

    . . . .

217

that this offense was not a lesser included one because it contained an additional statutory element. That is, the trial court reasoned that the use of a dangerous weapon was an essential element of the requested misdemeanor charge, but was only a "penalty enhancer" of the felony charge. The jury convicted Carrington on both counts, the trial court entered concurrent sentences of six years each, and Carrington appeals.

██ ██

The matter of whether to instruct the jury on a lesser included charge is a question of law. *State v. Salter,* 118 Wis. 2d 67, 83, 346 N.W.2d 318, 326 (Ct.App. 1984). This court is not bound by the trial court's determination of a question of law. *Id.* A trial court is not permitted to instruct on a lesser crime which is not included in the charged offense, *Hawthorne v. State,* 99 Wis. 2d 673, 680, 299 N.W.2d 866, 869 (1981), but a trial court's failure to submit an appropriate lesser included offense instruction when requested is prejudicial error entitling the defendant to a new trial. *Id.* at 684, 299 N.W.2d at 871.

██

To determine the propriety of submitting a charge to a jury on a lesser included offense, the trial court must employ a two-step analysis. First, the trial court must decide whether the proposed lesser offense is statutorily included within the greater offense. *Randolph v. State,* 83 Wis. 2d 630, 643, 266 N.W.2d 334, 340 (1978)

---

(3)    Reckless conduct consists of an act which creates a situation of unreasonable risk and high probability of death or great bodily harm to another and which demonstrates a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury. It is intended that this definition embraces all of the elements of which was heretofore known as gross negligence in the criminal law of Wisconsin.

(citation omitted). Then it must decide whether the evidence viewed most favorably to the accused provides a reasonable ground both for acquittal on the greater charge and for conviction on the lesser charge. *Id.* at 643–44, 266 N.W.2d at 340. Because the trial court here determined that endangering safety by reckless conduct in the operation of a dangerous weapon was not a lesser included charge, it never reached the second step of this analysis.

Although both parties, on appeal, agree that the trial court erred in concluding that the use of a dangerous weapon was only a "penalty enhancer" and not an element of the greater offense, we must undertake an independent analysis of the relevant criminal charges and their statutory elements. It is well settled that our courts are committed to an "elements only" analysis of whether one offense is included within another. *Hagenkord v. State,* 100 Wis. 2d 452, 481, 302 N.W.2d 421, 436 (1981). "[A]n offense is a 'lesser included' one only if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be proved for the 'greater' offense." *Id.;* sec. 939.66(1), Stats.

There are two elements under sec. 941.20(1)(a), Stats., comprising the misdemeanor crime of reckless use of weapons: (1) the defendant engaged in reckless conduct in the operation or handling of a dangerous weapon; and (2) the defendant endangered another's safety by his operation or handling of a firearm. *See* Wis J I—Criminal 1321. To support a conviction for the felony crime of endangering safety by conduct regardless of life, sec. 941.30, Stats., the defendant's conduct must be proven (1) to have been imminently dangerous

to another, (2) to have evinced a depraved mind regardless of human life, and (3) to have actually endangered another. *State v. Toliver,* 104 Wis. 2d 289, 294, 311 N.W.2d 591, 594 (1981); *see* Wis J I—Criminal 1345. Adding the charge "while armed" to a criminal complaint requires the use of sec. 939.63, Stats., which provides in part:

> Penalties; use of a dangerous weapon. (1)(a) If a person commits a crime while . . . using . . . a dangerous weapon, the maximum term of imprisonment prescribed by law for that crime may be increased.
> . . .
> . . . .
> (b) The increased penalty provided in this subsection does not apply if . . . using . . . a dangerous weapon is an *essential element* of the crime charged. [Emphasis added.]

In the instant case, Carrington was formally charged with violating secs. 941.30 *and* 939.63(1)(a), Stats., i.e., endangering safety "while armed." In rejecting Carrington's argument that "use of a dangerous weapon" was an element of the criminal charge against him, the trial court observed:

> Apparently our appellate courts have not ruled on the question . . . whether or not the use of a dangerous weapon, which is found in a separate section of the statute, as a penalty enhancer, once charged now becomes an element of the crime. It would seem to me it's not an element of the crime, that it is strictly a penalty enhancer.

We disagree. Section 939.63 is indeed a penalty enhancer, but unlike the "repeater" statute, sec. 939.62, Stats., it requires the establishment of a separate fact

(here, the use of a dangerous weapon) as well as the elements of the underlying offense. *See* comment, Wis J I—Criminal 990. The repeater statute increases the penalty for a particular crime but does not change the nature of the crime. *State v. McAllister,* 107 Wis. 2d 532, 537, 319 N.W.2d 865, 868 (1982) (citation omitted). Also, a repeater charge is relevant only to the action of the trial judge in imposing sentence after the jury has made a finding of guilt in respect to the crime tried before it. *Id.* at 538, 319 N.W.2d at 868 (citation omitted).

As the drafters of the jury instruction on sec. 939.63, Stats., noted, this statute closely resembles the concealing identity statute, sec. 946.62, Stats. *See* comment Wis J I—Criminal 990. In *Haldane v. State,* 85 Wis. 2d 182, 195, 270 N.W.2d 75, 81 (1978), our supreme court considered the defendant's argument that he was subjected to double jeopardy because he was punished both for armed robbery under sec. 943.32(1)(b) and (2), Stats., and for committing armed robbery while concealing his identity, contrary to sec. 946.62, Stats. The *Haldane* court held that "[w]hile sec. 946.62 . . . is a separate statute, its application merely makes it an aggravating factor of the underlying crime." *Id.* at 196–97, 270 N.W.2d at 82; *see also Schroeder v. State,* 96 Wis. 2d 1, 7, 291 N.W.2d 460, 463 (1980) ("while sec. 946.62 . . . does not create a substantive offense by itself, it does create a substantive offense when charged with an underlying crime").

In the instant case, the record shows that the criminal complaint identified the charge against Carrington as "endangering safety by conduct regardless of life while armed," that the trial court described the charge

to the jurors in those terms, and that the jury was instructed to determine whether Carrington committed the crime of endangering safety by conduct regardless of life while using a dangerous weapon. Clearly, the element of "using a dangerous weapon" became an element of the charge against Carrington. We therefore conclude that the trial court erred in holding that this element was only a penalty enhancer.

Although conceding that "use of a dangerous weapon" is an additional element, the State nevertheless contends that Carrington is still not entitled to the proposed lesser included charge. It argues that endangering safety while armed with a dangerous weapon can be committed without also committing reckless use of a weapon. The State cites two examples. An accused could engage in conduct endangering safety regardless of life while possessing a dangerous weapon, but not recklessly using the weapon. Or a person could engage in conduct endangering safety regardless of life while armed, but not violate sec. 941.20(1), Stats., because the definition of a dangerous weapon is broader under sec. 939.63(1), Stats., than under sec. 941.20(1).

The State cites the oft-quoted rule that for one crime to be included in another it must be " 'utterly impossible' to commit the greater crime without committing the lesser crime." *State v. Smith,* 55 Wis. 2d 304, 310, 198 N.W.2d 630, 633 (1972) (citation omitted). "Utterly impossible" is a graphic phrase, but not as all-encompassing as the State contends.[4]     Section

---

[4] From our examination of the case law it appears that the phrase "utterly impossible" was first used in *Laev v. State,* 152 Wis. 36, 139 N.W. 416 (1913). In that opinion we find no evidence to demonstrate that the phrase was intended to be descriptive of the "ele-

222

939.66(1), Stats., provides that a lesser included crime is "[a] crime which does not require proof of any fact in addition to those which must be proved for the crime charged." The test for a lesser included offense under this subsection concerns "only . . . the *legal elements* of the crime and not . . . the peculiar facts of the case at bar." *State v. Verhasselt,* 83 Wis. 2d 647, 664, 266 N.W.2d 342, 350 (1978) (emphasis added). In *Randolph,* the supreme court considered whether the offense of reckless use of a weapon, sec. 941.20, Stats., was a lesser included offense of attempted first degree murder, secs. 940.01 and 939.32, Stats. The *Randolph*

---

ments only" standard. In *Laev,* our supreme court was asked to consider whether a criminal fraud statute carrying a maximum penalty of three years imprisonment was included in another criminal fraud statute which carried a five-year prison term. The accused was charged with making false written statements about his corporation's assets and liabilities in order to fraudulently procure a line of credit from a bank. The *Laev* court concluded:

> It is true that a crime can be committed under [the greater offense] without committing one under [the lesser offense] also; but *it is utterly impossible to commit a crime under [the greater offense] in the form and manner in which it was committed in this case without also committing one under [the lesser offense].* This being so, and the offenses having sprung from the same transaction and being of the same nature, merely differing in degree, *it can make no difference,* in determining whether the lesser offense was included in the greater, *that other classes of offenses falling under [the greater offense] might be perpetrated without an offense being committed under [the lesser offense].*

*Id.* at 39–40, 139 N.W. at 418 (emphasis added).

As our supreme court noted sixty years later, the language used by the *Laev* court in the last sentence of the quote above "has no application to our present sec. 939.66, Stats., which defines included crimes." *Geitner v. State,* 59 Wis. 2d 128, 132, 207 N.W.2d 837, 840 (1973).

court's analysis focused on the elements of these statutory crimes, and its conclusion was succinct and clear:

> It cannot be said that reckless use of a weapon "does not require proof of any fact in addition to those which must be proved for" attempted murder, sec. 939.66(1), Stats. . . . . The crime of reckless use of a weapon requires the presence and use of a weapon. No weapon is required to commit the crime of attempted murder. Because a weapon is not statutorily necessary for attempted murder, reckless use of a weapon is not a lesser included offense of that crime.

83 Wis. 2d at 644–45, 266 N.W.2d at 341.

Thus, the rule is that where a proposed lesser offense requires any statutory element(s) in addition to those elements required for the greater offense, it is improper for the trial court to instruct the jury on the proposed lesser included charge. We therefore conclude that the phrase "utterly impossible" may only be used in the sense that it is utterly impossible to commit the statutory elements of the greater charge without also fulfilling the statutory elements of the lesser charge.

In the instant case, Carrington would have no recourse to his proposed lesser included charge of endangering another's safety by reckless conduct in the operation of a dangerous weapon, sec. 941.20(1)(a), Stats., if the State had only charged him with endangering safety by conduct regardless of life, sec. 941.30, Stats. The State, however, added the element of "while armed," sec. 939.63(1)(a), Stats., and thereby brought Carrington's proposed lesser included offense within the statutory element fold. The "reckless conduct" ele-

ment of sec. 941.20(1)(a) is subsumed as a species of conduct imminently dangerous to another evincing a depraved mind regardless of life, sec. 941.30. *See State v. Weso,* 60 Wis. 2d 404, 411, 210 N.W.2d 442, 445 (1973). ("To constitute a depraved mind, more than a high degree of negligence or recklessness must exist.")

Having concluded that Carrington's proposed lesser included offense met the statutory elements test, we turn to the second prong of the lesser included test. We must now decide as a matter of law whether the evidence, viewed most favorably to the accused, provides a reasonable ground both for acquittal on the greater charge and conviction on the lesser. *State v. Price,* 111 Wis. 2d 366, 377, 330 N.W.2d 779, 786 (Ct.App. 1983).

Here the trial court did not decide this issue because it excluded the requested instruction for failing to meet the "elements only" test. In undertaking our own review of the evidence, we initially note that the State, on appeal, concedes this issue and provides an admirably brief summary of the jury question presented:

> If reckless use is a lesser-included offense of endangering safety while armed, the state concedes that the defendant was entitled to an instruction on reckless use because, under a reasonable view of the evidence presented at trial, the jury could have acquitted the defendant of the crime charged and convicted him of reckless use. If the jury simply believed the defendant when he said he fired the gun up into the air rather than believing the police officers when they said the defendant fired the gun at them, it would have been reasonable to convict the defendant of reckless use while acquitting him of endangering safety.

The expert testimony introduced at trial does not establish exactly where Carrington pointed the weapon. An analyst from the state crime laboratory testified that the muzzle flash of Carrington's sawed-off shotgun would appear as a bright light even if fired at a forty-five degree angle. This expert also acknowledged that the type of shell Carrington fired would climb higher and travel further if fired into the air instead of horizontally. Because the shell fired by Carrington was never recovered, no expert opinion could be elicited as to the angle of fire. A jury, then, would be left to engage in its traditional function of assessing the credibility of the witnesses and weighing the evidence.

It is uncontroverted that this incident took place at night in an unlit area and that the police officers involved were in civilian attire. Carrington claims that he heard shots, saw one person shooting at him, fired a shot in the air and ran down an adjacent alley. The officers testified that Carrington turned, leveled his shotgun, fired a round at them from a distance of only seventy-one feet, then ran off.

Viewing the evidence most favorably to Carrington, there is a reasonable ground both for acquittal on the greater charge and conviction on the lesser charge. Thus, we hold that the trial court erred in refusing to submit Carrington's proposed jury instruction and that this case must be remanded for a new trial.

Lastly we turn to Carrington's contention that the evidence was insufficient to support his conviction. Even though we have concluded that the error in the jury instructions requries reversal and a new trial, our supreme court held in *State v. Ivy*, 119 Wis. 2d 591, 607,

350 N.W.2d 622, 631 (1984), that it is necessary for this court to decide the sufficiency of the evidence claim. Upon a challenge to the sufficiency of the evidence, we must determine whether the trier of fact could reasonably be convinced that the defendant was guilty beyond a reasonable doubt. *State v. Lossman,* 118 Wis. 2d 526, 540, 348 N.W.2d 159, 166 (1984) (citation omitted). Reversal is only required where the evidence is so insufficient in probative value and force that as a matter of law no trier of fact acting reasonably could be convinced beyond a reasonable doubt. *Id.* at 540–41, 348 N.W.2d at 166 (citation omitted). We review the evidence most favorably to the jury's findings. *State v. Toy,* 125 Wis. 2d 216, 222, 371 N.W.2d 386, 389 (Ct.App. 1985).

Carrington first argues that the charge involving officer Jenkins is totally unjustified. As a general rule, when different victims are involved there is a corresponding number of distinct crimes. *Austin v. State,* 86 Wis. 2d 213, 223, 271 N.W.2d 668, 672 (1978). Carrington bases his claim on his own assertion that he went to high school with Jenkins, that he would have recognized her if he had seen her, and that he saw only one large person doing the firing. Jenkins, however, testified that she was right behind Quezaire and that she saw Carrington turn and fire. Because the question of fact presented is a jury question, we reject Carrington's claim that the charge relating to Jenkins was unsupported by the evidence.

Carrington also argues that the discharge of a gun in the direction of another is not sufficient in itself to satisfy the state of mind necessary to constitute a "depraved" condition. He correctly observes that the quali-

227

ties of conduct which render it imminently dangerous and evincing a depraved mind regardless of life are to be found both in the conduct itself and in the circumstances of its commission. *State v. Blanco,* 125 Wis. 2d 276, 281, 371 N.W.2d 406, 409 (Ct.App. 1985) (citation omitted). He then argues that even if the jury believed he fired at the officers, the record reveals that he was "confused and surprised," that he acted "reflexively and with some justification after being fired upon," and that he fired "only one shot" and retreated. He concludes that this evidence is not sufficient to sustain a finding that his conduct evinced a depraved mind. We disagree.

In *Blanco,* this court reviewed the "depraved mind" element of sec. 941.30, Stats. We reiterated several well-settled principles:

> The statute does not require the existence of a[ny] particular state of mind in the actor at the time of the crime but only requires that there be conduct imminently dangerous to human life, which conduct evinces a depraved mind. . . . [T]he only intent necessary for the purposes of establishing the element of 'depraved mind' is the intent to do the act and not the intent to cause any harm.
>
> . . . .
>
> The excessiveness of the conduct in relation to its purpose, the nature of the conduct *and the disregard for the possible result of such conduct* evinces an unreasonable mind in that it lacked balance, a moral sense, and judgment and hence was depraved.

*Id.* at 281, 282, 371 N.W.2d at 409, 410 (citations omitted; emphasis added by *Blanco* court).

Here, as in *Blanco*, the trial court gave Wis J I—Criminal 1345. That instruction includes the following language:

> The depravity of mind referred to exists when the conduct endangering the safety of another demonstrates an utter lack of concern for the life and safety of another and for which conduct there is no justification or excuse. *It is not necessary that there be an intent to endanger the safety of another, but it is sufficient if the safety of another is endangered by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life.* [Emphasis added.]

From the evidence introduced at trial, the jury could find that Carrington failed to stop after twice being warned, that in turning toward the officers he brought his shotgun down from a "port arms" position to a horizontal position, and that he fired at the officers from a distance of seventy-one feet. We conclude it was not unreasonable for the jury to infer the presence of that depravity of mind necessary to support a conviction for endangering safety regardless of life.

*By the Court.*—Judgment reversed and cause remanded for a new trial.