COURT OF APPEALS
DECISION
DATED AND FILED

January 20, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1597-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2017CF505**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

JAMES LEE BALLENTINE,

  DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Racine County: MARK F. NIELSEN, Judge. *Affirmed*.

Before Neubauer C.J., Reilly, P.J., and Gundrum, J.

¶1    GUNDRUM, J.   James Lee Ballentine appeals from a judgment of conviction for two counts of delivery of cocaine and one count of possession with intent to deliver cocaine, all at or near a youth center. He asserts that the circuit court erroneously exercised its discretion in limiting the evidence he could present

at trial in support of his theory of defense that he was "framed" by his son, Denmark James, who was acting as a confidential informant (CI) for law enforcement. More specifically, Ballentine argues that he wanted to show, with evidence related to a specific 2015 event, that James had the skill to successfully hide drugs on his person so that they would not be located by law enforcement during the pat-down searches conducted on him prior to his drug buys with Ballentine. Ballentine claims that the questions the court did allow him to ask on this point were insufficient.

¶2    We conclude that Ballentine forfeited the arguments he now makes because he did not make them to the circuit court but instead gave the court every indication at the other-acts motion hearing that its ruling regarding the evidence he could present was "what [he] ha[d] been looking for." We relatedly conclude that, based upon the presentation Ballentine did make at that hearing, the court did not erroneously exercise its discretion in ruling as it did. As a result, we affirm.

## *Background*

¶3    Ballentine was charged with five counts related to the possession of, delivery of, and/or possession with intent to deliver illegal drugs, three of which counts stem directly from instances in 2016 in which he was alleged to have sold cocaine to James, who was acting as a CI at the time. Ballentine filed a motion to admit evidence at trial related to a 2015 arrest of James during which James successfully concealed controlled substances on his person such that they were not detected during a law enforcement search incident to the arrest. The substances were only discovered when the drugs were later found on a hallway floor of the Racine Police Department. Ballentine offered the evidence "for the purpose of showing [James's] motive, preparation and plan" and to raise question as to

James's credibility. Ultimately, Ballentine sought to introduce this 2015 evidence to show that (1) the illegal drugs that James turned over to law enforcement after meeting with Ballentine in 2016 could have been drugs that James skillfully hid on his person and that law enforcement failed to find during a pre-meeting search of James, instead of being drugs that Ballentine gave to James at the meeting; and (2) after the meeting, James handed the drugs over to law enforcement and told law enforcement that he had received the drugs from Ballentine in order to receive leniency for James's own sentencing related to his 2015 drug case.

¶4　　The circuit court held a hearing on Ballentine's motion. While counsel for Ballentine expressed at the start of the hearing that his motion "pretty well summarizes" Ballentine's evidentiary request, exactly what ruling Ballentine was seeking was unclear to the court, but after significant back and forth, greater clarity slowly emerged:

> [BALLENTINE COUNSEL]:
>
> There [were] reports [received from the State] which indicated that Mr. James had hidden and concealed controlled substance[s] on his person during an arrest in 2015, where the substances were not found until he was brought down to the police department and then after he was placed in [an] interview [room] and led out to use the bathroom, they were found in the hallway and other areas.
>
> I wanted to use th[is] other instance[] of conduct to show that Mr. James had basically motive. He had a plan and he had the purpose to conceal these items as part of the evidence that the State has in this case. The[re] are recorded video[s] of Mr. James … having alleged controlled substances delivered to him by Mr. Ballentine.
>
> At one point in time in one of the videos Mr. James goes into a bathroom … for basically no purpose [and] he is in there for ten or fifteen seconds. He didn't appear to use the bathroom [or] … wash his hands. Didn't appear to do anything. [He goes] in there for a short period of time, turned around and comes out. He [e]xits the building and reports back to the police.

THE COURT: Counsel, okay, frankly I did not understand your pleadings…. Are you telling me that Mr. James was acting as an informant against Mr. Ballentine?

[BALLENTINE COUNSEL]: Correct.

THE COURT: Okay. When was that?

[BALLENTINE COUNSEL]: …. February 2016. I think it was the first incident.

THE COURT: All right. Was he acting as an informant then for the police against Mr. Ballentine at the time of the arrest where [he was] supposedly concealing these drugs?

[BALLENTINE COUNSEL]: No.

THE COURT: Then I don't understand your pleadings.…

… What is it supposed to be proving? If he is not a C.I. at the time of the behavior hiding the drugs, what's it got to do with his behavior later on? Is that what you are offering it on[,] his behavior later on?...

[BALLENTINE COUNSEL]: Correct. The incident that was disclosed to me, it was in 2015 … where he was actually under investigation himself for distributing controlled substance[s].

….

During that incident he had controlled substances hidden on his person. He was arrested, presumably searched at the time he was [ar]rested[,] … [b]rought down to the police station, placed in an interview room.…

THE COURT: I am familiar with the sequence that was explained in your motion. I have that.

[BALLENTINE COUNSEL]: *The fact that he is able to hide controlled substances on his person, even though he has been searched by law enforcement officers is part of our defense in this case*…. [A]fter the alleged transaction, he goes into a restroom inside the King center. He stays in there for like I said ten or fifteen seconds, according to the video. He doesn't appear to do anything in the bathroom.… There is some rustling around. He leaves. And then he goes, meets with the detective and provides them with controlled substance[s].

4

THE COURT: Okay. Let me stop you. Then reframe it. *If I understand correctly*, you are not offering this to show interest as such or bias or prejudice. *You are offering the evidence to show that Mr. James had the capacity to conceal drugs on his person. Your theory then is that on this later date, when it was in his best interest to make it look like Mr. Ballentine was dealing drugs, he could have concealed the drugs on his person, which he then turned over to the police. Hey, Ballentine gave me these drugs. Is that the idea*?

[BALLENTINE COUNSEL]: *Yes*.

THE COURT: All right. *So it's knowledge or capacity of the technique ... [that] you are trying to prove?*

[BALLENTINE COUNSEL]: *Correct*.

THE COURT: All right. I now understand your theory. Sorry, counsel. I interrupted you.

[BALLENTINE COUNSEL]: That's fine. I believe it's relevant. I believe it's not prejudicial to the State just based on that sequence of events that I described. None of the videos are very clear.…

*I don't have much more to add. I apologize I wasn't so clear in my motion to the court in trying to express what evidence I was trying to get admitted.…*

THE COURT: … What is the State's response to this?

[STATE COUNSEL]: Your honor, it's too tangentially related.… I mean kind of like asking the court well drugs were in Mr. James['s] possession and because they were in his possession then he had to have brought the drugs to deal. Doesn't make sense.

Number one, obviously the people that the State and law enforcement are going to utilize as CIs are … [e]ither … financially motivated … [o]r … they have drug problems. [They have c]onvictions [and] arrests themselves[,] and they are going to try to get out of it. So I have a concern here that obviously we are going to put a CI on the stand. He will be going through with him what his record consists [of]. In fact he will be wearing orange.… He is in the jail still from the court's sentence. So the jury is going to still be able to see all of that.

But I don't think there is enough of a connection just because he had been convicted of dropping drugs off at law enforcement that he is bringing drugs to a drug deal. That doesn't make any sense for an other act. It hadn't met any of the prongs number one. It's going to become a trial within a trial where we are debating everything about Mr. James.

Number two, it's unfairly prejudicial because we are highlighting again something that already has a mechanism for a jury to judge credibility. That's by asking him, number one, if he has ever been convicted of a crime, how many times[,] [a]nd what he is getting in consideration of his testimony….

THE COURT: *Counsel, you are suggesting that the defendant's attorney can't ask Mr. James if he takes the stand, Mr. James, you know what the process was. They would search you. They wouldn't find anything. … You would go and do whatever you're doing. You come back. You hand him drugs. Surely you can ask that. Right?*

[STATE COUNSEL]: *Correct.*

THE COURT: *Are you suggesting that he can't be asked, Mr. James, you know very well how to conceal drugs on your person so that they won't be found in a cursory search?*

[STATE COUNSEL]: I am not saying he can't be asked that. But he can't go into the substance of his conviction much like we couldn't do that for any other witnesses.

THE COURT: Well you could if you brought [a] [Wis. Stat. §] 904.04 action and I granted it. All right. *What is he supposed to do if Mr. James then during cross-examination says no? I would never do that or no I don't know how to do that. Is he then allowed to get into it?*

[STATE COUNSEL]: [If he] answer[s] untruthfully, then the court can make a ruling on whether or not in rebuttal or in plea there to [sic] untruthful response if this would be allowed. Certainly not on direct. There isn't enough of a relationship.

….

6

[BALLENTINE COUNSEL]: … [W]hen he was acting as the informant in Mr. Ballentine's case, his case, Mr. James's underlying case [was pending].

THE COURT: Was still pending? *Surely I don't think the District Attorney is trying to dispute at all your right to go into the fact that he had a case pending. The fact that he wanted to make a deal. The fact that it would be good for him given this pending case if he could come back and show the good[s] that he [had] gotten.* [State's counsel], you're not suggesting that any of that is out of bounds?

[STATE COUNSEL]: No. Absolutely what his job function is to become [a] CI witness.

THE COURT: Okay.

[BALLENTINE COUNSEL]: Okay. *That's the information that I wanted to ask him about.* Obviously if *he* says yes, he has done that. *Then that's the information that I am seeking here.*

[STATE COUNSEL]: Yes. That he has done what? That he has concealed drugs?

….

*….I think [Ballentine's counsel] is looking for a ruling on kind of specific points. Right?*

THE COURT: I am a little confused on that myself. [Ballentine's counsel], your question[] is a good one. I mean [State's counsel] concedes that *you can investigate a man about it. Obviously you can. She can concede you ask him whether he knows how to conceal drugs on his person so that they wouldn't be found in cursory search. And then you get the answer you get. I will tell you if the guy says no, well then it seems to me that the probative value of this evidence far exceeds any prejudicial value that it may have and it comes in. Okay.*

[BALLENTINE COUNSEL]: *Yes.*

THE COURT: … I don't know this evidence is particularly necessary. It seems like common sense to me that people can conceal drugs on their person such they would not be found in the cursory search. That may not be common sense to the jury. *That's why you can ask him the question.*

7

If he says no, then I will admit this evidence. However, my analysis at this point is this. A, it's offered for [a] permitted purpose. B, does it tend to prove that. Yes. C, given that it's a fairly mundane area that I think probably falls within simple common sense. I don't see it compellingly probative unless, as we have discussed, the witness disputes it, at which point it becomes very probative. And it may in fact be gone into by you, A, by confronting him with it on cross-examination. Isn't it true on such and such a date. But B, I would then allow you to present witnesses to the other act as well. *Okay.*

[BALLENTINE COUNSEL]: *Yes.*

THE COURT: That's my ruling. *You can go into the area. It would be time wasting to present evidence on it if it's not in dispute.* You will know that by the time you get to your case because you will have done your cross-examination. *If he was conceding the point, we get your case, I won't let you waste time by introducing evidence on [a] conceded point. But if it is in dispute then my ruling is that it would be more probative than prejudicial.*

[BALLENTINE COUNSEL]: *That's what I have been looking for.*

THE COURT: Covering our statutory basis. It's admissible under [WIS. STAT. §] 904.04 because of permitted purpose. It's admissible under [WIS. STAT. §] 904.02 because it is relevant on a material point. But it is excluded under [WIS. STAT. §] 904.03 unless he contradicts it on cross. Is there anything that the parties need on that point?

[STATE COUNSEL]: Not from the State.

[BALLENTINE COUNSEL]: No. I don't think so. I think we both understand.

(Emphasis added.)

¶5 As part of his related questioning of James at Ballentine's trial the following week, Ballentine's counsel asked James, "So in the past you have concealed drugs on your person so people can't find them. Right?" James

8

answered, "Yes." Counsel continued, "You know how to do that so they won't be found during a search of your person. Right?" James answered, "Yes."

¶6   The jury found Ballentine guilty on two of the three charges of selling cocaine (not guilty on the third charge), guilty on the charge of possession with intent to deliver cocaine, and not guilty on the charge of possession of marijuana. Following sentencing, Ballentine filed this appeal.

## *Discussion*

¶7   Ballentine's primary point on appeal appears to be that the "details" from the 2015 incident in which James successfully hid drugs from law enforcement on his person would have provided significantly more "rhetorical punch" than general testimony that James "knew how to hide drugs."

> All of these details give a weight and substance absent from a bare, abstract statement about [James's] knowledge of how to hide drugs. The details more firmly establish [James's] proven ability to hide drugs from the police, and make it more likely that he was able to hide drugs from the police when they searched him before he made the alleged controlled purchases from Ballentine.

Ballentine adds that "asking [James] about the details of his prior [2015] instance of hiding drugs from the police would not have prolonged the trial in any significant way. The questioning would amount to perhaps a dozen additional questions …."

¶8   Fatal to Ballentine's appeal is the fact that not only did Ballentine fail to make any such more-specific-details or limited-additional-questions arguments to the circuit court despite the numerous opportunities he had to do so at the motion hearing, but his counsel instead indicated that the court's ruling was "what I have been looking for" and would secure for counsel "the information that

9

I am seeking here." We of course recognize that often counsel will want to show respect to the court and not risk irritating it by belaboring a point toward which the court has clearly shown disfavor, but that is a far cry from the circumstances here. Counsel for Ballentine simply failed to argue with any clarity that he was seeking to question James in a manner other than what the court was expressing as appropriate. Instead, Ballentine left the court with the impression that its ruling "was what [Ballentine] ha[d] been looking for."

¶9      "Arguments raised for the first time on appeal are generally deemed forfeited." *State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 (citation omitted). "The purpose of the 'forfeiture' rule is to enable the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal." *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612.

¶10     Based on the exchange between the circuit court, the prosecution, and counsel, we conclude that Ballentine forfeited his appellate argument that the circuit court erred by limiting evidence related to the 2015 drug-hiding incident involving James. Ballentine argues *on appeal* that he wanted to ask James about more specific details of the 2015 incident because such details would have greater impact than just a general admission by James of "knowing" how to conceal drugs on his person from law enforcement because the details would show that James actually had the "skill to pull it off." Ballentine, however, made no such argument before the circuit court. Relatedly, he also failed to suggest to the court, as he suggests on appeal, that he merely sought to ask "perhaps a dozen additional questions" to provide the additional details he now claims he sought. "A fundamental appellate precept is that we 'will not … blindside [circuit] courts with reversals based on theories which did not originate in their forum.'" *Schonscheck*

10

*v. Paccar, Inc.*, 2003 WI App 79, ¶11, 261 Wis. 2d 769, 661 N.W.2d 476 (citation omitted). Had Ballentine made clear to the court the arguments he now makes on appeal, particularly his more-specific-details argument, the court could have considered them and perhaps adjusted its ruling accordingly. *See State v. Salter*, 118 Wis. 2d 67, 79, 346 N.W.2d 318 (Ct. App. 1984) ("If these grounds for admissibility had been asserted when the evidentiary arguments were made, the [circuit] court could have addressed them in its ruling."). Here, Ballentine failed to make clear to the circuit court that he was asking to present more or different evidence related to the 2015 incident than that allowed by the court's ruling. Not only did counsel fail to make this clear, he did the opposite by telling the court that the ruling it was making on the issue was "what I've been looking for." Thus, Ballentine forfeited his appellate argument that the circuit court erred in ruling as it did.

¶11 Even if Ballentine had not forfeited the arguments he now makes on appeal, we would affirm the circuit court's evidentiary ruling unless the court erroneously exercised its discretion. *See State v. Sullivan*, 216 Wis. 2d 768, 780-81, 576 N.W.2d 30 (1998). In light of the presentation Ballentine did make with regard to his other-acts motion, we must conclude that he has failed to demonstrate that the court erroneously exercised its discretion in ruling as it did. *See Haskins v. State*, 97 Wis. 2d 408, 422-23, 294 N.W.2d 25 (1980) ("[W]here no explanation was given as to why defense counsel thought the question was material, no [erroneous exercise] of discretion can be found."); *see also Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 ("[O]n appeal 'it is the burden of the appellant to demonstrate that the [circuit] court erred.'" (second alteration in original; citation omitted)).

¶12    Moreover, Ballentine has failed to convince us the circuit court's ruling prevented him from questioning James in a more specific manner than he did.  Ballentine complains that the court's other-acts ruling "prevented the jury from hearing numerous relevant details beyond the abstract point that [James] knew how to hide drugs."  Apparently referring to James's cross-examination testimony in which he agreed that "in the past [he] ha[d] concealed drugs on [his] person so *people* can't find them" and he "know[s] how to do that so they won't be found during a search of [his] person,"  Ballentine states,  "[James] knew how to hide drugs from the police, not just 'people.'  Of course, it would be more difficult to hide drugs from a [police officer] than a [member of the lay public]."[1] (Emphasis added.)  He adds that during the 2015 incident, James hid the drugs from this same police department—the Racine Police Department—"suggesting that he knew the specific methods the police department used to search for drugs." These complaints go nowhere as there was nothing in the court's other-acts ruling that would have restricted Ballentine's counsel from using the word "police" in his questioning instead of "people" and, relatedly, there was nothing in the ruling that suggested counsel could not have added yet additional specificity to his question, such as phrasing it, "So in the past you have successfully concealed drugs on your person so that an officer of the Racine Police Department was not able to find them during a search of your person.  Right?"  Such phrasing would have been within the bounds of the court's other-acts ruling, and a "Yes" answer from James would have clearly indicated to the jury that there was a specific prior instance in

---

[1] In his brief, Ballentine mistakenly writes:  "Of course, it would be more difficult to hide drugs from a member of the lay public than a police officer."

which James had been searched by an officer of the Racine Police Department who failed to find drugs that James had skillfully hidden on his person.[2]

¶13    Even with counsel's two questions asked as they were, together, we have no doubt the jury understood that James's "yes" answers suggested that he previously had hidden drugs on his person from the *police* and not "the lay public." To begin, any reasonable juror would think, "Who else but the police would be performing a search of James's person?" Such a juror would especially think this in light of the fact that at that point in James's testimony, he had already testified on direct examination that he: (1) had been convicted of a crime three times, including a conviction for selling illegal drugs; (2) was always searched by a police officer prior to any drug buys he performed for the police, which searches were "from head to toe" while his clothes were on and he was "stretch[ed] out like if I was being arrested"; (3) was searched by police before and after making all three drug buys with Ballentine in this case; and (4) testified again, on cross-examination, to being searched by police in connection with the three drug buys with Ballentine, including being asked about being searched by police after making the third "buy" just four questions before being asked, "So in the past you have concealed drugs on your person so people can't find them. Right?" and "You know how to do that so they won't be found during a search of your person. Right?"

¶14    Based upon the foregoing, we conclude Ballentine forfeited the arguments he makes on appeal and even if he had not forfeited the arguments, he

---

[2] Moreover, Ballentine never indicated to the circuit court in connection with his other-acts motion that he wanted to be able to make the suggestion to the jury that James "knew the specific methods the police department used to search for drugs."

has failed to demonstrate the circuit court erred in ruling as it did on his other-acts motion. *See Gaethke*, 376 Wis. 2d 448, ¶36.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.